# Exhibit G

1
2
3  **VIRGINIA:**
4      **IN THE CIRCUIT COURT OF FAIRFAX COUNTY**
5
6  **Deirdre Young**          )
                )      **FILED**
7                  )
8       *Plaintiff,*         )    MAR 1 4 2023
                )     JOHN T. FREY
9       **vs.**           )    Clerk of the Circuit Court
                )     of Fairfax County, VA
10 **Washington Gas Light Company**    )   **Case No: CL-2022-0017236**
11                 )
12                 )   **Jury Demand**
13      **&**            )   For Violations of 42 U.S.C §1981 and Virginia
14 **Temporary Solutions, Inc.**      )   Human Rights Act. Va. Code §§2.2-2901 *et*
                )   *seq.*
15                 )
16      *Defendants.*        )
17                 )
18                 )
19                 )
20         **FIRST AMENDED COMPLAINT**

21    The Plaintiff Deirdre Young files her complaint of discrimination, harassment and
22
23 retaliation against the Defendants and joint employers Washington Gas Light Company
24 ("Washington Gas") and Temporary Solutions, Inc. ("Temporary Solutions") when she was
25 subject to racial harassment and discrimination, along with age harassment and discrimination,
26
27 when *inter-alia*, she was told by her supervisor Thomas Robb ("Robb"), a Caucasian male that
28 he was called a "Nigger lover," and that Young was "older than everyone in here and she has
29 kids my age!" The latter statements are direct evidence of discrimination against Young, an
30
31 African-American female in her 50s.
32

When Young engaged in protected activities by complaining about Robb's behavior to Washington Gas, Temporary Solutions and Robb.  Afterwards, Young was fired from her employment, and replaced by individual(s) outside her protected class. Consequently, an action for violations of the federal and state laws now follows.

## Part I. Parties

1. Plaintiff Deirdre Young is a 56-year-old African-American female. She was employed by Washington Gas and Temporary Solutions from February 5, 2018 to March 17, 2020. At the time of her termination, Young earned an annual wage of $36,500.00, and was an employee under Va. Code § 2.2-2901 *et seq.*, of the VHRA. She was also an employee under 42 U.S.C §2000 *et seq.*, for claims under 42 U.S.C. 1981.

2. Defendant Washington Gas is a public utility holding company that serves customers in DC, Maryland, and Virginia. It has more than 500 employees. Washington Gas was an employer of the Plaintiff under 42 U.S.C §2000 *et seq.*, for claims under 42 U.S.C. 1981.

3. Defendant Temporary Solutions is an employee placement company with officers and locations in Virginia. Temporary Solutions was also an employer of the Plaintiff under the VHRA. They were also an employer under 42 U.S.C. 2000 *et seq.*, for claims under 42 U.S.C. §1981.

## Part II. Jurisdiction & Venue

4. This Court has subject matter jurisdiction over Plaintiff's VHRA claims under Va. Code § 2.2-3908. This Court also has concurrent jurisdiction over her claims under federal law.[1]

---

[1] *See Mattaponi Indian Tribe v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd.*, 43 Va. App. 690, 709, 601 S.E.2d 667, 677 (2004) [citing to] *Nevada v. Hicks*, 533 U.S. 353, 366 (2001) ("recognizing that under our system of dual sovereignty state courts have

5. Venue is also proper in Virginia according to Va. Code Ann § 8.01-262(4) because the decision to finalize and approve Young's termination occurred in Northern Virginia.

**Part III. Exhaustion of Administrative Remedies**

6. On or about August 11, 2020, Plaintiff filed her complaint of discrimination based on race, sex, and age, along with harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC") charge number 570-2020-02394 ("2394"). Charge number 2394 was filed against both employers Washington Gas and Temporary Solutions. **Exhibit A**, EEOC charged dated August 11, 2020.

7. On or about May 4, 2021, a claim for discrimination, harassment and retaliation was also filed for claims under the Virginia Human Rights Act ("VHRA") with the Virginia Office of the Attorney General, Office of Civil Rights ("OCR") for claims against both Washington Gas and Temporary Solutions. **Exhibit B**, OCR charged dated May 4, 2021.

8. On or about October 20, 2022, a notice of right to sue was received from the EEOC, for charge number ending in 570-2020-2394. This matter was filed on December 22, 2022, well before the 90-day right to sue period would have expired on January 18, 2023.

9. There are no exhaustion requirements for claims under 42 U.S.C §1981. It also has a 4-year statute of limitations.

**Part IV. Statement of Facts**

10. Plaintiff Deirdre Young is a Black female age 56. She was employed at Washington Gas in Northern Virginia, as part of "Temporary Solutions" placement of employees with Washington Gas.

---

jurisdiction to adjudicate federal claims.")

11. Temporary Solutions had a contract for staff and services with Washington Gas.

12. Young was employed by Washington Gas and Temporary Solutions from February 5, 2018 to March 17, 2020. Young worked in Virginia.

13. Both Washington Gas and Temporary Solutions are <u>joint employers</u> of the Plaintiff, insofar as Washington Gas set the hours and schedule of employment, provided the equipment for Plaintiff to work on, supervised the Plaintiff, and also ultimately terminated the Plaintiff. Washington Gas had control over the Plaintiff.

14. In February 2018, Young was employed as a "Proctoring Administrator" at Washington Gas. As part of her duties, she was to prepare the schedule for Washington Gas testing facilities, and to coordinate with the Defendant's training team to update proctoring processes, amongst other duties. To allow Young to perform her duties, Washington Gas provided Young with work badges, access to its IT[2] systems, and all Washington Gas "hardware and software." Washington Gas 2019 Statement of Work.

15. Sometime in October 2018, Young was promoted to a "Proctoring Coordinator" by Washington Gas. She was supervised by Lynette Hyde. Hyde retired in January 2019.

16. As the Proctoring Coordinator, Young became the point person for Washington Gas Operator Qualifications Knowledge Testing center maintaining the day-to-day operations and providing assistance to Washington Gas trainers and contractor administrators.

17. Young earned positive performance reviews from Washington Gas.

18. Sometime in October 2019, Thomas Robb, a Caucasian male, began to supervise Young, and the rest of the African-American female staff. Robb was an employee of Washington Gas.

---

[2] Information Technology

19. Sometime in November 2019 – December 2019 Robb informed Young and the predominately Black staff, that when his (Robb) father married a Black female, he became homeless, because the neighborhood he was living in, did not like Black people.

20. Robb stated that as a result, his family had to live in a trailer park, and that he (Robb) was bullied and beaten up, for being a "nigger lover."

21. He continued by stating, that, because he had a black grandmother, he understood Young as a Black person.

22. Young was deeply offended by Robb's express racism and the use of a racial slur.

23. In a November/December 2019 staff meeting, Robb made ageist comments to his staff, saying, "Deirdre is older than everyone in here and she has kids my age!" Robb laughed. This is direct evidence of age discrimination by Washington Gas.

24. Young was again offended and disturbed by his ageist comments. Young had trouble concentrating at work. Young was also not aware of Robb engaging in racist and ageist stereotypes with non-Black colleagues and those who were in their 20s. Young felt she was being targeted by Robb because of her race and age.

25. Young told Robb, that "it was not funny."

26. Young's co-worker Tyrita Thomas, a Black female, scolded Robb and said, "Robb you know you cannot say that right?"

27. Young was so deeply offended, she walked out of the meeting.

28. Upon returning, Robb walks over to Young while still laughing, stating, "Deirdre, I should not have said that! You can hit me, go ahead and hit me right here!"

29. Robb had pulled his sleeve up and gestured towards his arm.

30. Young told him, "No, I am not laying my hands on you, and you are correct, that you are wrong."

**Young's Protected Activities**

31. In January 2020, Young engaged in **protected activity** by complaining to Gwendolyn Drain, the Sr. Staffing Specialist from Temporary Solutions.

32. Young told Drain about Robb's past racist and ageist comments. Drain advised Young to speak directly with Robb.

33. Young then again engaged in protected activity, by directly speaking with Robb about his past discriminatory behavior towards Young.

34. Young and Robb met at a conference room at Washington Gas. Robb attended with his computer.

35. Young repeated Robb's past ageist and prejudicial comments to her, such as, "be more motherly to your team," "you are older," "when did you start having children? At age 12?"

36. Young also informed Robb that he (Robb) spoke to Young and the predominately Black staff in a belittling manner and that he was engaging in race discrimination Robb looked at his computer the whole time. Robb may have been taking notes of the conversation.

37. One afternoon also in January 2020, Tyrita Thomas, Contressa Keitt (other employees at Washington Gas) & Young were conversing.

38. Robb joined their conversation.  Thomas, Keitt and Young were speaking about different life experiences and the impact it has had on them and others.

39. Robb then proceeded to talk about what Donald Trump is doing for the country and that President Barack Obama has had the worst record ever and how he (Obama) did nothing for his own people.

40. Thomas, Keitt and Young did not agree and chose not to acknowledge it.

41. Then Robb suddenly says "Well, you people kill each other every day!"

42. To which Young in her shock said, "Really, are you serious?"

43. Thomas told Robb, "I am not having this conversation" and she got up and walked away.

44. Young then told Robb, that she (Young) was done with the conversation.  Keitt, too, appeared shocked with Robb's comments.

45. Young and Thomas were also deeply offended by the racist remarks from Robb. It affected their ability to work.

46. Young knew that any conversation with Robb concerning Donald Trump was sensitive because Young had previously witnessed on two occasions very heated discussions between him and Marco Smart, a former colleague at Washington Gas.

47. Immediately after confronting Robb again about his racial prejudices and racism, Robb began to retaliate against Young.

48. Robb did this by providing Young with deadlines that Young could not meet. Robb also gave Young other team and staff members' responsibilities, knowing full well, that Young would not be able to complete these tasks in time.

49. Robb would also provide Young with verbal instructions on tasks assigned, only to contradict them in his emails.

50. Robb also denied Young overtime (OT); Young was previously allowed to earn overtime. Robb now prevented Young from earning OT. Young believed that she was being denied the opportunity for additional over time because of her prior protected activities against her employers and supervisor Robb.

51. On or about March 6, 2020, Young emailed Robb and informed Robb that he was interfering with her work duties.

52. Robb met with Young and immediately asked Young, "Who do [you] know in HR?"

53. Young replied, "I don't know anyone in HR, why?"

54. Robb reminisces that at one of his previous jobs an LGBTQ individual reported him for inappropriate comments towards them and that he (Robb) didn't think his comments were inappropriate. Robb went on to state that had they (LGBTQ employees) come to him directly they could have resolved the issue without getting HR involved.

55. Robb continued to say that he believed he and Young had built a trust with one another and that Young should already know that if Young has an issue at work, Young does not need to involve HR and others.

56. Young reminded Robb of their conversations and protected activities earlier in 2020, in relation to his racist and ageist comments.

57. Robb then stood up, angrily looked at Young and said, "You remind me of my step-mother!"

58. Young said, "What is that supposed to mean? I don't think that's right for you to be saying that to me at all especially since you have made it very clear that you did not like her!"

59. Young again spoke to Ms. Drain of Temporary Solutions about Robb and that he was discriminating against her based on race and age.

60. Soon after, the staff were furloughed because of COVID-19.

61. On June 5, 2020, Young then learned that all but her and her colleague Tyrita Thomas (also a Black female) were called back to work by Washington Gas and Temporary Solutions.

62. When Thomas asked Drain, why she was not called back to work with the rest of her colleagues, he told her, "I don't know. Who knows what Tom [Robb] is doing? He is in a world of his own."

63. Young then learned that four new individuals were hired by Washington Gas and/or Temporary Solutions.

64. Washington Gas and Temporary Solutions also replaced Young with an individual outside her protected class, and or, individual(s) who did not engage in protected activities.

## Part V. Causes of Action
### Count I. Age Discrimination under the Virginia Human Rights Act (VHRA)
### Va. Code §2.2-2900 et seq

65. Plaintiff reincorporates by reference all the allegations above.

66. At all present times Defendant Washington Gas & Temporary Solutions were employees of the Plaintiff subject to the Virginia Human Rights Act (VHRA), Va. Code §2.2-2900 et seq

67. At all pertinent times, Plaintiff Young was entitled to protections under the VHRA.

68. The VHRA prohibits discrimination in employment on the basis of age.

69. Defendants and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of her age by treating her differently from and less preferably then similarly situated employees outside of Plaintiff's protected class, in violation of the VHRA. Defendants actions also show direct evidence of age discrimination. *See Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1025 (D.C. 2014)  ("We note that the court did not refer to appellant's allegation in the Complaint that Biggs "told him that he planned to hire a much younger man for [appellant's] position," or to appellant's deposition testimony that Biggs told him that C&E was "probably going to go with younger people at the next contract" (a statement that Biggs denied making). Had appellant cited these

putative statements as direct evidence that C&E acted with a discriminatory motive, the trial court possibly would have treated them as evidence of age-related *animus*.")

70. Defendants knew or should have known of the types of discrimination that Plaintiff suffered.

71. Defendants conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

72. Defendants acts of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity.

73. This intentional, reckless and/or willful discrimination on the part of Defendants constitutes a violation of Plaintiff's rights under the VHRA.

74. By reasons of Defendants discrimination, Plaintiff is entitled to all legal, compensatory, punitive and equitable remedies under the VHRA, including her attorney's fees.

### Count II. Age Based Harassment under the VHRA.

75. Plaintiff reincorporates by reference all the allegations above.

76. At all pertinent times Defendants were employers of the Plaintiff subject to the provisions of the VHRA.

77. At all pertinent times, Young was an employee entitled to protections under the VHRA.

78. Young was subject to an ageist hostile work environment and unwelcome harassment by the Defendant.

79. This harassment was so severe **_or_** pervasive as to alter the terms, conditions and privileges of Plaintiff's employment. Plaintiff was <u>extremely offended</u> by Defendant's harassment and had trouble concentrating at work.

77. The harassment altered the conditions of her employment and created an abusive work environment and was imputable to the Defendant.

78. The affirmative defense of *Faragher*[3] and *Ellerth*[4] allows an employer to avoid strict liability for a supervisor's harassment of an employee if no tangible employment action was taken against the employee. Examples of tangible employment action include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001).

79. Plaintiff here suffered tangible employment actions from her supervisor when she was unable to perform her job because of the harassment, and when Plaintiff was subsequently terminated on June 2020. As a result, "vicarious liability is absolute." *Mikels v. City of Durham*, 183 F.3d. 323, 332 (4th Cir. 1999).

80. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

---

[3] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)
[4] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

81. As a consequence of Defendants' actions, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

### Count III. Race Discrimination under the VHRA.

82. Plaintiff reincorporates by reference all the allegations above.

83. At all present times Defendants Washington Gas and Temporary Solutions were employers subject to the provisions of the VHRA.

84. At all pertinent times, Plaintiff Young was entitled to protections under the VHRA.

85. The VHRA prohibits discrimination in employment on the basis of race.

86. Defendants and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of her race by treating her differently from and less preferably then similarly situated employees outside of Plaintiff's protected class, in violation of the DCHRA. Defendant's actions also show <u>direct evidence</u> of race discrimination. *See Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1025 (D.C. 2014)

87. Defendants knew or should have known of the types of discrimination that Plaintiff suffered.

88. Defendants conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

89. Defendants actions of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity.

90. This intentional, reckless and/or willful discrimination on the part of Defendant constitutes a violation of Plaintiff's rights under the DCHRA.

91. By reasons of Defendants discrimination, Plaintiff is entitled to all legal, compensatory, punitive and equitable remedies under the VHRA, including her attorney's fees.

## Count IV. Race Based Harassment under the VHRA.

92. Plaintiff reincorporates by reference all the allegations above.

93. At all pertinent times the Defendants were employers of the Plaintiff subject to the provisions of the VHRA.

94. At all pertinent times, Young was an employee entitled to protections under the VHRA.

95. Young was subject to a racial hostile work environment and unwelcome harassment by the Defendant.

96. This harassment was so severe **_or_** pervasive as to alter the terms, conditions and privileges of Plaintiff's employment. Plaintiff was <u>extremely offended</u> by Defendants racial harassment and had trouble concentrating at work.

97. The harassment altered the conditions of her employment and created an abusive work environment and was imputable to the Defendant.

98. The affirmative defense of *Faragher*[5] and *Ellerth*[6] allows an employer to avoid strict liability for a supervisor's harassment of an employee if no tangible employment action was taken against the employee. Examples of tangible employment action include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001).

99. Plaintiff here suffered tangible employment actions from her supervisor when she was unable to perform her job because of the harassment, and when Plaintiff was subsequently terminated on June 2020. As a result, "vicarious liability is absolute." *Mikels v. City of Durham*, 183 F.3d. 323, 332 (4th Cir. 1999).

---

[5] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)
[6] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

100. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

101. As a consequence of Defendants actions, it is additionally liable for legal, compensatory, punitive and equitable remedies under the VHRA, including her attorney's fees.

### Count V. Retaliation under the VHRA.

102. Plaintiff reincorporates by reference all the allegations above.

103. At all pertinent times Defendants were employers subject to the provisions of the VHRA.

104. At all pertinent times, Plaintiff was entitled to protection under the VHRA.

105. The VHRA protects an employee from retaliation.

106. Plaintiff engaged in protected activities and opposition to practices made unlawful under the VHRA while employed by Defendants.

107. As a result of her protected activities and opposition to practices made unlawful under the VHRA, Plaintiff was subjected to adverse employment actions, including termination

and other adverse employment conditions that can dissuade an employee from filing a claim of discrimination.

108. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by Defendants.

109. Defendants acts of retaliation caused Plaintiff to suffer economic losses, physical harm, mental and emotional distress, embarrassment, humiliation and indignity.

110. This intentional, reckless, and/or willful retaliation by the part of Defendants constitutes a violation of Plaintiff's statutory rights under the VHRA

111. By reason of Defendants retaliation, Plaintiff is entitled to all legal, compensatory, punitive and equitable remedies under the VHRA, including her attorney's fees.

## Count VI. Race Discrimination under 42 U.S.C. §1981.

112. Plaintiff reincorporates by reference the allegations above.

113. At all present times Defendants Washington Gas and Temporary Solutions were employers subject to 42 U.S.C §1981.

114. At all pertinent times, Plaintiff Young was entitled to protections under Section 1981.

115. Section 1981 prohibits discrimination in employment on the basis of race.

116. Defendants and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of her race by treating her differently from and less preferably then similarly situated employees outside of Plaintiff's protected class, in violation of the 42 U.S.C §1981. Defendants' actions also show <u>direct evidence</u> of race discrimination. See <u>Schafer v. State Dep't of Health & Mental Hygiene, 359 F. App'x 385, 389 (4th Cir. 2009)</u> ("Rutley-Johnson's statement that this position was a done deal, and an African-

American female candidate was going to be hired could reasonable be understood as direct evidence of discrimination by the committee member who cast the deciding vote.")

117. Defendants knew or should have known of the types of discrimination that Plaintiff suffered.

118. Defendants' conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

119. Defendants' actions of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity.

120. This intentional, reckless and/or willful discrimination on the part of Defendants constitutes a violation of Plaintiff's rights under 42 U.S.C §1981.

121. By reasons of Defendants discrimination, Plaintiff is entitled to all legal, compensatory, punitive and equitable remedies under Section 1981, including her attorney's fees.

**Count VII. Race Based Harassment under 42 U.S.C. §1981**

122. Plaintiff reincorporates by reference all the allegations above.

123. At all pertinent times the Defendants Washington Gas and Temporary Solutions were employers of the Plaintiff subject to the provisions of 42 U.S.C §1981.

124. At all pertinent times, Young was an employee entitled to protections under Section 1981.

125. Young was subject to a racial hostile work environment and unwelcome harassment by the Defendants Washington Gas and Temporary Solutions.

126. This harassment was so severe _or_ pervasive as to alter the terms, conditions and privileges of Plaintiff's employment. Plaintiff was extremely offended by Defendants racial harassment and had trouble concentrating at work.

127. The harassment altered the conditions of her employment and created an abusive work environment and was imputable to the Defendants.

128. The affirmative defense of *Faragher*[7] and *Ellerth*[8] allows an employer to avoid strict liability for a supervisor's harassment of an employee if no tangible employment action was taken against the employee. Examples of tangible employment action include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001).

129. Plaintiff here suffered tangible employment actions from her supervisor when she was unable to perform her job because of the harassment, and when Plaintiff was subsequently terminated on June 2020. As a result, "vicarious liability is absolute." *Mikels v. City of Durham*, 183 F.3d. 323, 332 (4th Cir. 1999).

130. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

---

[7] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)
[8] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

131. As a consequence of Defendants actions, it is additionally liable for legal, compensatory, punitive and equitable remedies under 42 U.S.C §1981, including her attorney's fees.

### Count VIII. Retaliation under 42 U.S.C §1981.

132. Plaintiff reincorporates by reference all the allegations above.

133. At all pertinent times Defendants Washington Gas and Temporary Solutions were employers subject to the provisions of 42 U.S.C §1981.

134. At all pertinent times, Plaintiff was entitled to protection under Section 1981.

135. Section 1981 protects an employee from retaliation.

136. Plaintiff engaged in protected activities and opposition to practices made unlawful under 42 U.S.C §1981 while employed by Defendants.

137. As a result of her protected activities and opposition to practices made unlawful under Section 1981, Plaintiff was subjected to adverse employment actions, including termination and other adverse employment conditions that can dissuade an employee from filing a claim of discrimination.

138. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by Defendants.

139. Defendants acts of retaliation caused Plaintiff to suffer economic losses, physical harm, mental and emotional distress, embarrassment, humiliation, and indignity.

140. This intentional, reckless, and/or willful retaliation by the part of Defendants constitutes a violation of Plaintiff's statutory rights under Section 1981.

141. By reason of Defendants' retaliation, Plaintiff is entitled to all legal, compensatory, punitive and equitable remedies under Section 1981, including her attorney's fees.

## VI.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Deirdre Young seeks judgment against all Defendants, jointly and severally, as follows:

a.  That the Court enter a declaratory judgment in her favor against the Defendants Washington Gas & Temporary Solutions;

b.  Declare that the conduct of Defendants is a willful violation of Plaintiff's rights as secured by the VHRA and 42 U.S.C §1981

c.  That the Court award Plaintiff the minimal amount of $500,000 in damages, as permitted under the Virginia Human Rights Act and 42 U.S.C. §1981

d.  Award Plaintiff punitive damages in the amount to be shown at trial;

e.  Award Plaintiff backpay and pecuniary and out-of-pocket expenses;

f.  Order Defendants Washington Gas & Temporary Solutions to pay compensatory damages including emotional distress damages, all reasonable attorneys' fees, court costs, and expenses incurred by Plaintiff as a result of Defendants Washington Gas & Temporary Solutions' actions and inactions, as well as pre- and post-judgement interest; and,

g.  Grant Plaintiff such other and further relief as justice and the nature of this case may require and are within the equitable powers for this honorable Court.

## VII.    JURY DEMAND

Plaintiff requests a trial by jury on all counts.

Dated: February 15, 2023                              Respectfully Submitted,

                                                     **Deirdre Young**

By Counsel:

Monique A. Miles, Esq. (VSB#78828)
Old Towne Associates, P.C.
5290 Shawnee Road, Suite 200
Alexandria, Virginia 22312
Phone: (703) 519-6810
mmiles@oldtowneassociates.com
***Attorney for Plaintiff Deirdre Young***