**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| DEIRDRE YOUNG, | |
| *Plaintiff*, | |
| v. | Case No.: 1:23-cv-00445 |
| WASHINGTON GAS LIGHT COMPANY, | |
| and | |
| TEMPORARY SOLUTIONS, INC. | |
| *Defendants*. | |

## BRIEF IN SUPPORT OF DEFENDANT TEMPORARY SOLUTION INC.'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Temporary Solutions, Inc. ("Temporary Solutions" or "TSI"), by and through its undersigned counsel, hereby respectfully submits this Brief in Support of its Motion to Dismiss for failure to state claims upon which relief may be granted in response to Plaintiff Deirdre Young's ("Young" or "Plaintiff") First Amended Complaint.

## I.        INTRODUCTION

Plaintiff's claims for discrimination (Counts 1 & 3), harassment (Counts 2 & 4), and retaliation (Count 5) based on her age and race brought pursuant to the Virginia Human Rights Act ("VHRA") fail as a matter of law because Plaintiff has failed to exhaust her administrative remedies before the Virginia Office of Civil Rights (the "OCR"). While Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue from the EEOC, Plaintiff's complaint to the OCR was not submitted until more than 300 days after the alleged discrimination/retaliation occurred and, therefore, was

1

untimely. Additionally, Plaintiff never received a right to sue from the OCR, which is a necessary condition precedent for a viable lawsuit under the VHRA. Accordingly, her state law claims must be dismissed.

Additionally, Plaintiff's Complaint is insufficient to state a claim under 42 U.S.C. § 1981 ("Section 1981") even under liberal pleading standards. Particularly, she has not alleged any direct act on the part of <u>anyone</u> at Temporary Solutions that could constitute harassment, discrimination, or retaliation, and has not shown why Temporary Solutions should be liable for any alleged conduct by co-defendant Washington Gas Company ("Washington Gas"). Further, Plaintiff points to no adverse employment action (if her allegations even qualify as adverse actions in the first place relative to Temporary Solutions) that allegedly resulted from discrimination. Finally, Plaintiff has alleged only two instances of alleged <u>race-based</u> comments (and none on the part of Temporary Solutions) which fall woefully short of the standard for a hostile work environment claim in this Circuit and also has not adequately alleged a claim for retaliation. Accordingly, while Temporary Solutions disagrees with Plaintiff's recitation of the facts, even assuming their veracity, all of Plaintiff's claims in her First Amended Complaint must be dismissed as a matter of law.

## II.      STATEMENT OF FACTS[1]

Defendant Temporary Solutions is a staffing company that provides a variety of services to its clients, including professional talent acquisition, contingent staffing, and recruitment process outsourcing. Prior to the COVID-19 pandemic, Plaintiff was employed by Temporary Solutions and was placed with Temporary Solutions' client,  Washington Gas. (*See* Plaintiff's First Amended Complaint at ¶¶ 10-12 [hereinafter "Compl."], attached to Defendants' Notice of Removal as

---

[1]      These statement of facts accept the liberal pleading standard under Rule 12(b)(6), understanding that Temporary Solutions reserves the right to dispute the veracity of Plaintiff's alleged facts at a later date.

Exhibit G [Dkt 1-7].) During the relevant time period, Plaintiff worked as a "proctoring coordinator" for Washington Gas, and beginning in October 2019, reported to Thomas Robb ("Robb") of Washington Gas. (*Id.* at ¶¶ 15-18.)

Plaintiff alleges that, during November to December 2019, Robb made comments to her and others regarding his childhood experiences after his father married a black woman, stating that the neighborhood he lived in "did not like Black people," that he had to move into a trailer park, and was beaten up for being a "n****r lover." (*Id.* at ¶¶ 19-20.) He also allegedly stated that he "understood Young as a black person" because he had a black grandmother. (*Id.* at ¶ 21.) Plaintiff also contends that Robb made "ageist comments" when he told Plaintiff she was older than everyone else there, and had kids his [Robb's] age. (*Id.* at ¶ 23.) After this last comment, Plaintiff left the meeting and another employee allegedly chastised Robb for this statement. (*Id.* at ¶¶ 26-27.)

In January 2020, based on the foregoing, Plaintiff allegedly complained to Temporary Solutions' Staffing Specialist Gwendolyn Drain ("Drain") about Robb and Drain then advised Plaintiff to speak with Robb directly. (*Id.* at ¶¶ 31-32.) When Plaintiff confronted Robb, she contends that he repeated his comments about her being older than others on the team. (*Id.* at ¶¶ 33-35.) In a subsequent conversation, Robb allegedly made comments regarding how much more President Trump had done for the country than President Obama and then allegedly stated "[w]ell, you people kill each other every day." (*Id.* at ¶¶ 38-41.) Plaintiff then expressed her shock and disagreement with Robb's comments, and alleges that Robb then began retaliating against her by setting unrealistic expectations and deadlines and giving contradictory instructions. (*Id.* at ¶¶ 42-48.) Plaintiff next allegedly confronted Robb again, this time in March 2020, and he allegedly told her not to get HR involved and stated that Plaintiff reminded him of his mother. (*Id.* at ¶¶ 51-58.)

3

Plaintiff also contends that she then again complained to Drain. (*Id.* at ¶ 59.)

Soon thereafter, Plaintiff (and all other Temporary Solutions staff placed with Washington Gas) were furloughed due to reduced staffing needs associated with the onset of the COVID-19 pandemic. (*Id.* at ¶ 60.)

On June 5, 2020, Plaintiff was informed that she was not going to be asked to return to her placement with Washington Gas after its furlough ended. (*Id.* at ¶ 61.) When she asked Drain why she [Plaintiff] was not asked to return, she claims Drain told her that she did not know, but alluded to the fact that it was Robb's decision.

Plaintiff then filed a Charge of Discrimination (the "Charge") against Temporary Solutions with the Equal Employment Opportunity Commission (the "EEOC") on August 11, 2020. (*See id.* at ¶ 6; *see also* Deirdre Young Charge of Discrimination [hereinafter the "Charge"], attached hereto as **Exhibit A**.) In the Charge, Plaintiff alleged that she believed she had been "discriminated and retaliated against by Washington Gas and Temporary Solutions" and indicated that she wanted the "EEOC to vindicate all [her] rights under Title VII." (*Id.*) She did not make any mention of her rights under or any alleged violations of the Virginia Human Rights Act, Va. Code § 2.2-3900 *et seq.* (the "VHRA"). (*Id.*)[2] On May 4, 2021, almost a year after she was not asked to return to Washington Gas, Plaintiff alleges that she filed a complaint for discrimination with the Virginia OCR asserting claims against both Washington Gas and Temporary Solutions. (*See id.* at ¶ 7; *see also* Young Virginia OCR Complaint [hereinafter the "OCR Complaint"], attached hereto as **Exhibit B**.)

On October 12, 2022, after the PWCHRC issued a closure letter, the EEOC issued Plaintiff

---

[2]     The EEOC then transferred processing of the Charge to the Prince William County Human Rights Commission (the "PWCHRC").

a Notice of Right to Sue, stating that if she wanted to "file a lawsuit against the respondent(s) on this charge under **federal** law in federal or state court," she must file within 90 days of receipt. (*See* Deirdre Young Notice of Right to Sue [hereinafter "Right to Sue"] attached hereto as **Exhibit C** (emphasis added); *see also* Compl. at ¶ 8 (stating that Plaintiff received the Right to Sue from the EEOC but making no reference of any such letter from the OCR).)

### III.     STANDARD OF REVIEW

Rule 12(b)(6) permits courts to dismiss pleadings that fail to state a claim and spare litigants the burden of defending against insufficient causes of action. "A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint 'state[s] a claim to relief that is plausible on its face.'" *Barnhill v. Garland*, No. 1:21-cv-1377 (AJT/WEF), 2022 WL 18585322, at *5 (E.D. Va. Oct. 19, 2022) (*quoting United States v. Triple Canopy*, 775 F.3d 628, 634 (4th Cir. 2015)). To survive a motion to dismiss, "[t]he complaint must contain sufficient factual allegations that, taken as true, 'raise a right to relief above the speculative level' and 'across the line from conceivable to plausible.'" *Id.* (*quoting Walters v. McMahen*, 684 F.3d 435, 493 (4th Cir. 2012)); *see also Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). In addition to the allegations of the Complaint, the Court "may consider the attachments to the complaint, documents incorporated in the complaint by reference, and documents 'attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020).

## IV.     ARGUMENT AND CITATION TO AUTHORITY

**A.     Plaintiff's State Law Claims Against Temporary Solutions Must Be Dismissed Because Plaintiff Failed to Exhaust her Administrative Remedies under the VHRA.**

"The VHRA prescribes an extensive remedial scheme that employees must follow when relying on the rights and policies articulated in the Act." *Hice v. Mazzella Lifting Tech., Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022). To bring a claim for discrimination or retaliation under the VHRA, an employee must first "file a complaint in writing under oath or affirmation with the Office of Civil Rights of the Department of law." Va. Code. § 2.2-3907(A). Once a charge has been filed, the OCR "shall conduct an investigation sufficient to determine whether there is reasonable cause to believe the alleged discrimination occurred." Va. Code. § 2.2-3907(D). After the investigation is concluded and the OCR has attempted to reach a resolution, if applicable, the OCR "shall issue a notice that the case has been closed and the complainant shall be given notice of his right to commence a civil action." Va. Code. § 2.2-3907(F).

Here, assuming that Plaintiff even filed a timely complaint with the Virginia OCR, she never received a notice of right to sue from that government entity and therefore, cannot bring any claims pursuant to the VHRA. Plaintiff filed her Charge with the EEOC in August 2020 asserting *only* that she wanted to vindicate her rights pursuant Title VII. (*See* Ex. A.) She did not then cross-file it with the OCR or otherwise give any indication that she was seeking to vindicate her rights under the VHRA. (*See id*.) The PWCHRC then investigated her Charge and transferred it back to the EEOC, which issued a notice of right to sue informing Plaintiff that she could bring a lawsuit against TSI pursuant to **federal** law only, making no mention of bringing suit pursuant to the VHRA or any other applicable state law. (*See* Ex. C; Comp. at ¶ 8.)

Further, while Plaintiff now alleges that she *eventually* filed a complaint of discrimination with the Virginia OCR, she did not do so, if at all, until May 4, 2021—almost a year after she was

asked not to return to Washington Gas, and well outside of the allowable time for filing such a complaint. According to 1 Va. Admin. Code 45-20-30, a complainant who seeks to bring any claims of discrimination to the Virginia OCR must do so within 180 "days from the day upon which the alleged discriminatory practice occurred" or 300 days if the complainant is also alleging violations of federal anti-discrimination statutes. Here, in her complaint allegedly filed with the OCR on May 4, 2021, Plaintiff alleged that the last date of discrimination was June 17, 2020, and that she wanted the OCR to "vindicate all of her rights under Virginia law." (*See* Ex. B.) She made no mention of vindicating her rights under federal law. (*Id.*) However, even giving Plaintiff the benefit of the doubt and assuming she had 300 days to file her OCR complaint, it was filed 322 days after the alleged last date of discrimination on June 17, 2020. (*Id.*) Finally, even if Plaintiff's OCR Complaint had been timely—which it was not—she still did not receive any right to sue from the OCR. (Compl. at ¶ 8.)

As both Virginia state and federal courts have concluded, the Right to Sue that Plaintiff received from the EEOC is insufficient to comply with the specific procedures required to bring her claims under the VHRA. *See Parikh-Chopra v. Strategic Mgmt. Servs., LLC*, No. CL 2021-0003051, 2021 WL 9918463, at *2 (Fairfax Cty. Cir. Ct. Dec. 9, 2021); *see also Jordan v. Sch. Bd. of City of Norfolk*, No. 2:22cv167, 2022 WL 16835868, at *11-13 (E.D. Va. Nov. 9, 2022). In *Parikh-Chopra*, the Court determined that "[o]nly the presentment of claims and the exhaustion of the administrative remedies before the <u>Virginia Attorney General's Office of Civil Rights</u> satisfy the prerequisites to filing a discrimination lawsuit in Virginia's state courts." 2021 WL 9918463 at *2 (emphasis added). It went on to explain that the federal statute (42 U.S.C. § 2000e-5), which authorizes the filing of federal discrimination claims with either the EEOC or a state or local agency applies only to claims brought under federal law and cannot be conflated "with the limited

procedures recognized under Virginia law" because "Virginia law does not recognize the exhaustion of administrative remedies with the EEOC as a precondition to filing a discrimination lawsuit in state court under Va. Code § 2.2-3908." *Id.* Similarly, in *Jordan*, the Court concluded that "Plaintiff's VHRA claim [was] procedurally defective because she has not met the VHRA requirement that a claimant obtain a right-to-sue notice from [the OCR] prior to filing her state law claim" even though she had received a right to sue from the EEOC. *Jordan*, 2022 WL 16835868 at *13 (holding that EEOC right to sue that did not make any mention of the VHRA was not sufficient to bring state law claim). The Court reasoned that an EEOC right to sue letter that "was limited in scope to 'plaintiff's right to pursue a claim under federal law" and was contemplated under federal statute is "not relevant to triggering" state law remedies. *Id.*

Plaintiff here, like those in *Jordan* and *Parikh-Chopra*, attempts to conflate the requirements for exhausting her administrative remedies with the EEOC and filing a lawsuit under federal law (Section 1981) with those specific, separate requirements set forth by the VHRA. When Plaintiff filed her Charge, she made no mention of her rights under the VHRA (*see* Ex. A) and when she apparently finally filed a complaint with the OCR, she did so after the time for that filing long had expired. (*See* Ex. C.) Compounding this problem, Plaintiff only received a Right to Sue from the EEOC, which only mentioned that she had ninety days from receipt to file **federal** claims —it made no mention of any right to seek relief under the VHRA. (*See* Ex. C.) Because Plaintiff has not received a right to sue from the OCR, she cannot bring claims for violations of the VHRA against Temporary Solutions as the right to sue issued by the EEOC is "not relevant to triggering" her right to sue under the VHRA. *See Jordan*, WL 16835868 at *13. Thus, all of her claims based upon the VHRA should be dismissed.

4870-9611-6060.v2

**B.**     **Plaintiff Has Failed to Sufficiently Plead Discrimination, Harassment, or Retaliation Under Section 1981 By Temporary Solutions, Either Directly or as a Joint Employer.**

Plaintiff has failed to allege that Temporary Solutions specifically engaged in any alleged discriminatory, harassing, or retaliatory behavior, citing only to her reporting certain concerns to Drain on two occasions as the only facts actually involving Temporary Solutions. Plaintiff has alleged that Washington Gas and Temporary Solutions were her joint employers.[3] While Plaintiff's Statement of Facts (Part IV, Compl.) separately identifies conduct by Temporary Solutions employees and Washington Gas employees, Plaintiff's Causes of Action (Part V, Compl.) utilizes the term "Defendants" interchangeably. Simply because an individual may have two employers, however, does not mean that each employer is liable for the acts of the other employer. *See Coffey v. Tyler Staffing Services, Inc.*, Civil Action No. 7:19-cv-00015, 2021 WL 1132599, at *6 (W.D. Va. Mar. 24, 2021).

As a staffing agency, Temporary Solutions may be held liable for violations of Section 1981 either (1) through its own direct discrimination, harassment, or retaliation against an employee, or (2) through its failure to take corrective actions to remedy discrimination, harassment, retaliation by a co-employer about which they knew or should have known was occurring. *See Brief-McGurrin v. Cisco System, Inc.*, Case No. 1:18CV131, 2019 WL 1332357, at *2 (M.D.N.C. March 25, 2019). Further "when an employee claims discrimination against two joint employers, she must show that [each] defendant knew or should have known of the discriminatory conduct and that it failed to take those corrective measures within its control." *See*

---

[3]     A joint-employer determination under the framework established by the Fourth Circuit in *Butler v. Drive Automotive Industries of America, Inc.*, is a fact-intensive inquiry likely requiring the analysis of factors outside of the Complaint. *See Butler v. Drive Automotive Industries of America, Inc.*, 793 F.3d 404, 414 (4th Cir. 2015). Accordingly, strictly for purposes of this Rule 12(b)(6) motion, Temporary Solutions will assume that it could constitute a joint employer of Plaintiff, as pled in the Complaint.

*id.* (*quoting Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 937-38 (D.S.C. 1997) (internal quotes omitted)).

Because Plaintiff does not allege any discriminatory, harassing, or retaliatory conduct by any Temporary Solutions employee, Plaintiff has failed to allege that Temporary Solutions directly violated Section 1981. Accordingly, in order for Plaintiff to plead a claim upon which relief can be granted under Section 1981 against Temporary Solutions, Plaintiff must allege that Temporary Solutions knew or should have known of alleged discriminatory, harassing, or retaliatory conduct (in this case, by Robb) and then failed to take corrective action. Plaintiff has made three allegations specific to Temporary Solutions:

- "In January 2020, Young engaged in protected activity by complaining to Gwendolyn Drain, the Sr. Staffing Specialist from Temporary Solutions. Young told Drain about Robb's past racist and ageist comments. Drain advised Young to speak directly with Robb." (Compl. at ¶¶31-32);

- "Young again spoke to Ms. Drain of Temporary Solutions about Robb and that he was discriminating against her based on race and age." (Compl. at ¶ 59); and

- "When Thomas asked Drain, why she was not called back to work with the rest of her colleagues, he told her "I don't know. Who knows what Tom [Robb] is doing? He is in a world of his own." (Compl. at ¶ 62).

These allegations are insufficient to establish that Temporary Solutions "knew or should have known" of any alleged unlawful conduct. Regarding Plaintiff's race discrimination and race-based harassment claims, Plaintiff has not specifically alleged what she communicated to Temporary Solutions, understanding that she does not allege any involvement of any kind by Temporary Solutions before January 2020. At that time (and apparently for the first time), Plaintiff alleged that she informed Drain about "Robb's past racist and ageist comments;" however, this allegation does not provide any facts regarding the content of that discussion, which are needed to determine if it expressed sufficient information to then put Temporary Solutions on notice of

10

Robb's alleged conduct from that point forward. The specifics of that discussion are particularly critical, in light of the fact that at least a portion of Plaintiff's alleged complaints, *i.e.*, the alleged ageist comments, are not actionable under Section 1981. Further, Plaintiff failed to allege that she informed Temporary Solutions of any alleged retaliatory conduct on behalf of Washington Gas.

Plaintiff also has not alleged if she interacted with Temporary Solutions while she was on-site at Washington Gas, and she has not alleged that Temporary Solutions was involved in her day-to-day management or oversight while she was staffed at Washington Gas. Thus, the Complaint does not support a reasonable inference that Temporary Solutions knew or should have known of any alleged discriminatory, harassing, or retaliatory conduct. The Complaint moreover does not support a reasonable inference that Temporary Solutions failed to take (or even could have taken) corrective action. Temporary Solutions essentially is absent from the Complaint.

Where courts have found, at the motion to dismiss stage, that a staffing agency knew or should have known about alleged discriminatory conduct and failed to take corrective action, those complaints contained detailed allegations explicitly establishing the staffing agency's knowledge of the underlying conduct of its client. For example, in *Valasquez v. Sonoco Display & Packaging, LLC*, the complaint included allegations that the staffing company had an on-site supervisor at the client's location who witnessed some of the alleged conduct personally; that the employee filed a complaint with the staffing company following his termination based on the alleged discrimination, and after the staffing company spoke to its client, the staffing company upheld the plaintiff's termination; and, finally, that there was a dispute between the staffing company and its client over who had final responsibility for the decision to terminate the plaintiff. *See Valasquez v. Sonoco Display & Packaging, LLC*, Case No. 1:17CV865, 2018 WL 1773128 at *5 (M.D.N.C. April 11, 2018). Based on the forgoing, the court in *Valasquez* determined dismissal was

premature. Unlike in *Valasquez*, Plaintiff has failed to allege that Temporary Solutions had an onsite employee who witnessed any of the alleged conduct (or otherwise had any personal knowledge of the conduct at issue); that Temporary Solutions failed to take corrective action; or that Temporary Solutions played any role in the decision allegedly made by Robb not to re-call Plaintiff following Washington Gas's COVID-19 furlough. (*See generally* Compl.)

Likewise, in *Byorick v. CAS, Inc.*, the plaintiff alleged that she complained multiple times about a fear of retaliation, requested a new supervisor, and alleged that the staffing company failed to take corrective action "for fear of jeopardizing its business relationship with" the client. *See Byorick v. CAS, Inc.*, 114 F. Supp. 3d 1123, 1127–28 (D. Col. 2015). In *Signore v. Bank of America, N.A.*, the court similarly found that the plaintiff plausibly alleged that the staffing agency "did nothing and, to the contrary, told Plaintiff to be quiet and endure age discrimination when she complained." *See Signore v. Bank of America, N.A.*, Civil Action No. 2:12cv539, 2013 WL 6622905, at *6 (E.D.Va. Dec. 13, 2013). None of these allegations are present here, as Plaintiff has not alleged that Temporary Solutions failed to take corrective action or that Temporary Solutions told Plaintiff to "be quiet and endure" the discrimination.

Plaintiff's Complaint brings no direct allegations against Temporary Solutions, and Plaintiff has failed to allege, with particularity, that Temporary Solutions should be liable for alleged conduct of Washington Gas based on its knowledge of that conduct or its failure to take corrective action. Accordingly, Plaintiff has failed to allege plausible claims for race discrimination, race-based harassment, or retaliation under Section 1981 directly against Temporary Solutions or against Temporary Solutions as an alleged joint-employer.

**C.    Plaintiff Has Failed to Allege Facts Sufficient to Support a Claim of Discrimination Based on Race Under Section 1981.**

Alternatively, even if the Court finds that Temporary Solutions could conceivably be liable

as a joint employer for purposes of this motion, Plaintiff has still failed to plead sufficient facts to support a claim of race discrimination under Section 1981.[4] A plaintiff may prove a race-discrimination claim under Section 1981 through "direct or circumstantial evidence showing that an adverse employment action was motivated by intentional discrimination aimed at the plaintiff's [race]," or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green. See Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).[5]

Here, before even turning to whether Plaintiff has alleged direct evidence of discrimination or, in the alternative, satisfies the *McDonnell Douglas* framework, Plaintiff's allegations fail to state a claim because Plaintiff has not alleged that she suffered any adverse employment action because of her race. Viewing the Complaint as a whole, Plaintiff has alleged that she: (1) was provided with deadlines she could not meet and was given other team members' responsibilities knowing she would be unable to complete the tasks in time (Compl. at ¶ 48); (2) was given verbal instructions that differed from subsequent email instructions (*Id.* at ¶ 49); (3) was denied overtime (*Id.* at ¶ 50); and (4) was not called back to work at Washington Gas following the furlough resulting from COVID-19 (*Id.* at ¶¶ 61-64).

While Temporary Solutions disagrees that many of these allegations could even constitute adverse employment actions under Section 1981, such an analysis is unnecessary because Plaintiff has not alleged that but-for her race she would not have suffered these alleged actions. *See Ali v. BC Architects Engineers, PLC*, 832 Fed. App'x. 167, 171 (4th Cir. 2020) ("[T]o state a § 1981 race-discrimination claim, a plaintiff must allege facts making it plausible 'that, but for race, [she] would not have suffered the loss of a legally protected right' under the statute."). Plaintiff has

---

[4]        Temporary Solutions also joins in any argument made by Washington Gas.

[5]        The same framework applies to discrimination claims under Title VII and Section 1981. *See Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

asserted that she suffered these alleged adverse employment actions because she complained about her supervisor's behavior, not because of her race. (*See* Compl. at ¶¶ 47-50, 61-64). Accordingly, Plaintiff's cause of action for race discrimination under Section 1981 fails to state a claim upon which relief can be granted because the facts alleged in the Complaint do not support the reasonable inference that Plaintiff was discriminated against based on her race.

**D.     Plaintiff Has Failed to Allege Facts Sufficient to Support a Claim of Harassment Based on Race Under Section 1981.**

Similarly, Plaintiff has also failed to plead a valid race-based harassment claim against Temporary Solutions under Section 1981 because Plaintiff has failed to plead factual allegations supporting severe and pervasive conduct that altered the terms of her employment. Under Section 1981, a plaintiff may pursue a harassment or hostile-work environment claim if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ali*, 832 Fed. App'x. at 172 (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotes omitted). Further, to establish the alleged harassment was racially motivated, Plaintiff must show that but-for her race, she would have been treated differently. *See Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007). In order to state a valid race-based hostile work environment claim, a plaintiff must allege that "there is (1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Ali*, 832 Fed. App'x. at 172 (*quoting Guessous*, 828 F.3d at 221) (internal quotes omitted). The "severe and pervasive prong" is a high standard to satisfy, and it includes both a subjective and objective component. *See Brown v. Bratton*, Civil Case No.: 1:19-cv-01450-JMC, 2021 WL 3510578, at *8 (D. Md. Aug. 10, 2021). The allegations are analyzed

14

based on their frequency, severity, whether they are physically threatening or humiliating, or a mere offensive utterance, and whether they unreasonably interfere with an employee's work performance. *See id.* Further, "[r]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII," and "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Perkins v. International Paper Company*, 936 F.3d 196, 208 (4th Cir. 2019) (internal quotes omitted).[6]

Plaintiff has pled allegations of both racist and ageist comments (first generally informing Temporary Solutions of the same in January 2020); however, because ageist comments do not relate to a category protected by Section 1981, these allegations cannot contribute to the severity and pervasiveness of the alleged unwelcome conduct. *See Harris v. Integrity Management Consulting Inc.*, Civil Action No. 1:19-cv-900, 2021 WL 1438310, *5 (E.D.Va. Mar. 16, 2021) (holding that comments unrelated to applicable protected class were not relevant to hostile work environment analysis). Plaintiff has pled two instances of alleged unwelcome conduct related to race, one instance occurred at staff meeting in November or December of 2019 and another instance occurred during a conversation in January 2020. Two instances of arguably race-based comments over a two-to-three month period is entirely insufficient to constitute either severe or pervasive harassment. *See Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 491-92 (E.D.N.C. 2020) (finding plaintiff failed to plausibly allege severe or pervasive conduct where she

---

[6]    In the Fourth Circuit employees can bring suit against their employers for a racially hostile work environment under § 1981 under the same test used for Title VII cases. See *Crawford v. Newport News Industrial Corp.*, Civ. Action No.: 4:14-cv-130, 2018 WL 4561671, at *2 (E.D. Va. Mar. 2, 2018).

alleged she was referred to as "black Christel" an unspecified number of times, "black heifer" once, and "black b***h" twice over the course of six months); *see also Chang Lim v. Azar*, 310 F. Supp. 3d 588, 600 (D. Md. 2018) (single instance of supervisor telling employee he "can't work with a Korean like you" insufficiently severe or pervasive as it was a "lone comment that did not consist of an explicit, odious racial slur"). Accordingly, Plaintiff's allegations do not meet the high for severe or pervasive conduct to create an actionable claim of race-based harassment under Section 1981.

**E.     Plaintiff Has Failed to Allege Facts Sufficient to Support a Claim of Retaliation Under Section 1981.**

Finally, even if the Court finds that Temporary Solutions could be liable as a joint employer for purposes of this motion, Plaintiff has still failed to plead a valid retaliation claim under Section 1981 because the employment actions that Plaintiff alleges were retaliatory do not constitute a materially adverse action and/or lack a causal connection to her alleged protected activity. To state a claim for retaliation under Section 1981, Plaintiff must establish (1) that she engaged in a protected activity, (2) she was subject to a materially adverse action, and (3) that there is a causal connection between the protected activity and the adverse action. *See Pearson v. Prince William Cty. School Board*, Civil Action No. 1:22-cv-377, 2023 WL 2506415, at *7 (E.D. Va. Mar. 14, 2023). In this context, "materially adverse action" means an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Wallace v. Mary Baldwin University*, Civil Action No. 5:22-cv-00017, 2023 WL 2200997, at *8 (W.D. Va. Feb. 24, 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (internal quotes omitted). A retaliatory action is "materially adverse" if it is a "significant detriment," not just "relatively insubstantial or trivial." *See Laird v. Fairfax County, Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (internal quotes omitted); *see also Michael v. Virginia Commonwealth Univ.*, Civil

Action No. 3:18-cv-125-JAG, 2019 WL 128236 at *3 (E.D.Va. Jan. 8, 2019) ("[R]eprimands without collateral consequences, snubbing, antipathy, and 'petty slights' do not qualify as [materially] adverse action.").

Plaintiff has alleged that she was retaliated against for objecting to what she considered discriminatory conduct in the following ways: (1) she was provided with deadlines she could not meet and was given other team members' responsibilities knowing she would be unable to complete the tasks in time (Compl. at ¶ 48); (2) she was given verbal instructions that differed from subsequent email instructions (*Id.* at ¶ 49); (3) she was denied overtime (*Id.* at ¶ 50); and (4) she was not called back to work at Washington Gas following its furlough resulting from COVID-19 (*Id.* at ¶¶ 61-64). None of these alleged actions are sufficient to dissuade a reasonable worker from making a charge of discrimination, which is supported by the fact that Plaintiff subsequently filed a charge with the EEOC. (*Id.* ¶ 6). *See Wallace*, 2023 WL 2200997, at *9 (finding "at least subjectively" that the alleged retaliatory conduct did not dissuade plaintiff from filing a subsequent EEOC charge).

More particularly, the assignment of additional work, the imposition of allegedly unreasonable deadlines, or receiving contradictory instructions, do not constitute actions that are significantly detrimental to an employee. *See Michael*, 2019 WL 128236 at *1 and 4 ("[a]n increased workload would not discourage a reasonable employee form engaging in a protected activity.); *Cole v. Hill Phoenix, Inc.*, Civil Action No. 3:12CV621–HEH, 2013 WL 499341, at *1-4 (E.D.Va. Feb. 7, 2013) (finding that an untimely paycheck, a transfer to a different department, and an untimely performance evaluation did not constitute adverse employment actions).

Further, not every loss of overtime hours constitutes a materially adverse action; this is especially true here because Plaintiff has not specified the magnitude of earnings that resulted from

17

such a loss, or even what overtime opportunities she allegedly had and lost (and to whom). *See Ray v. International Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) (finding where a plaintiff lost "significant part of her earnings" due to a reduction in overtime hours sufficient to qualify as an adverse employment action, while declining to decide whether every reduction in an employee's overtime hours constituted an adverse employment action.).

Additionally, at least one court in this circuit has previously found that in the "unique circumstances" of a temporary employment agency, an employee being instructed not to return to her assignment at a particular location is an expected and customary part of a temporary employee's job. *See Mullis v. Mechanics & Farmers Bank*, 994 F.Supp. 680, 686-687 (M.D.N.C. Oct. 17, 1997) ("Plaintiff nowhere alleges that [the temporary employment agency] discharged her, refused to assign her to other positions, only offered her assignments inferior to her position at Mechanics, or other similar circumstances which could constitute an adverse employment decision."). Accordingly, not being asked back to Washington Gas following a furlough does not constitute a material adverse employment action on its own, because Plaintiff has not alleged additional facts such as, whether she was then offered an alternative comparable assignment from Temporary Solutions. In other words, if Temporary Solutions offered Plaintiff a seamless transition to another employer, then the loss of a temporary placement at Washington Gas would not be an adverse employment action.

Plaintiff has also failed to allege any casual link between her protected activity and not being called back to work following the COVID-19 furlough. Generally, a plaintiff can demonstrate the required causal link in two ways: (1) she can present direct evidence that the alleged adverse employment action occurred because of the protected activity; or (2) she can show that the adverse act bears sufficient temporal proximity to the protected activity. *See Pearson*, 2023

18

WL 2506415, at *8. Here, Plaintiff has not alleged direct evidence that not being called back to work following the furlough was because of her protected activity. Therefore, her claim can only survive if she alleges sufficiently temporal proximity.

There is no bright line test regarding a length of time that constitutes sufficient temporary proximity to the protected activity to create a causal connection between an adverse employment action and protected activity. The Fourth Circuit, however, has found that a three-to-four-month gap between the protected activity and termination was "too long to establish a causal connection by temporal proximity alone," and that even a ten-week separation between two events can significantly weaken any inference of causation. *See Adams v. Department of Defense*, 2017 WL 6699484, at *5 (E.D.Va. Sept. 29, 2017) (quoting *Perry v. Kappos*, 489 Fed.Appx. 637, 643 (4th Cir. 2012). Here, Plaintiff has alleged that she learned she was not called back to work at Washington Gas on June 5, 2020, and her latest protected activity, as alleged, occurred on or about March 6, 2020. (*See* Compl. at ¶¶ 51,61.) Based on this length of time, Plaintiff has failed to allege a causal link between her protected activity and any alleged adverse employment action. Thus, Plaintiff's claim for retaliation under Section 1981 should be dismissed for failure to allege facts sufficient to state a plausible cause of action.

## CONCLUSION

Based on the facts and arguments outlined above, Temporary Solutions respectfully requests the Court grant Temporary Solutions' motion to dismiss under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

4870-9611-6060.v2

Respectfully submitted this 11th day of April, 2023.

**ARNALL GOLDEN GREGORY LLP**

By:  _/s/ Justin F. Ferraro_

Justin F. Ferraro
Virginia State Bar No. 92226
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4967
Fax: 202.677.4031
justin.ferraro@agg.com

Henry Perlowski
*Pro Hac Vice forthcoming*
171 17th Street NW, Suite 2100
Atlanta, GA 30363
Telephone: 404.873.8684
henry.perlowski@agg.com

Lindsey Locke
*Pro Hac Vice forthcoming*
171 17th Street NW, Suite 2100
Atlanta, GA 30363
Telephone: 404.873.8712
lindsey.locke@agg.com

*Attorneys for Defendant Temporary Solutions, Inc.*

4870-9611-6060.v2

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2023, I filed the foregoing Temporary Solutions, Inc.'s Motion to Dismiss using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

Dated: April 11, 2023                    By:   /s/ *Justin F. Ferraro*

                                                 Justin F. Ferraro
                                                 Virginia State Bar No. 92226
                                                 ARNALL GOLDEN GREGORY LLP
                                                 2100 Pennsylvania Avenue, NW
                                                 Suite 350S
                                                 Washington, DC 20037
                                                 Telephone: 202.677.4967
                                                 Fax: 202.677.4031
                                                 justin.ferraro@agg.com