UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| DEIRDRE YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON GAS LIGHT | ) | Civil Case No. 1:23-cv-00445-PTG-JFA |
| COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TEMPORARY SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WASHINGTON GAS
LIGHT COMPANY'S MOTION TO DISMISS**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

RELEVANT FACTUAL BACKGROUND FROM THE FIRST AMENDED COMPLAINT .....1

RELEVANT PROCEDURAL BACKGROUND WITH REGARD TO PLAINTIFF'S
ADMINISTRATIVE CLAIMS BEFORE THE EEOC .............................................................3

LEGAL STANDARD .........................................................................................................5

ARGUMENT ....................................................................................................................6

I.    Plaintiff Has Failed to State a Claim for Relief under the VHRA. .....................................6

      A.  Counts I–V Fail to State a Claim Because Plaintiff Failed to Exhaust
          Administrative Remedies as to Washington Gas Before Filing Suit under the
          Virginia Human Rights Act. .........................................................................6

      B.  Counts I–V Fail to State a Claim as to Washington Gas Because They Are Time-
          Barred by the Applicable Statute of Limitations. .............................................8

II.   Plaintiff Has Failed to State a Claim for Relief under 42 U.S.C. § 1981. ........................10

      A.  Count VI Fails to State a Claim Because Based on the Facts as Alleged Plaintiff
          Cannot Prove the Elements of a Section 1981 Race Discrimination Claim. ...............10

      B.  Count VII Fails to State a Claim Because the Conduct Alleged Was Neither Racist
          Nor Sufficiently Severe and Pervasive to Constitute a Racially Hostile Work
          Environment..............................................................................................13

      C.  Plaintiff Fails to State a claim of Retaliation in Count VIII Because She Cannot
          Establish That She Would Have Been Rehired *But For* Her Protected Activity.........15

CONCLUSION................................................................................................................18

CORE/0833121.0015/181398141.4

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ali v. BC Architects Engineers, PLC*,
  832 F. App'x 167 (4th Cir. 2020), *as amended* (Oct. 16, 2020).................................11, 15, 17

*Amirmokri v. Baltimore Gas & Elec. Co.*,
  60 F.3d 1126 (4th Cir.1995) ........................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................5

*Barker v. Computer Science Corp.*,
  No. 1:13-CV-857, 2015 WL 1442864 (E.D. Va. Mar. 27, 2015)...............................13, 14, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................5

*Benjamin v. Sparks*,
  173 F. Supp. 3d 272 (E.D.N.C. 2016), *aff'd*, 986 F.3d 332 (4th Cir. 2021).....................12, 13

*Boyer-Liberto v. Fontainebleau Corp.*,
  786 F.3d 264 (4th Cir. 2015) ........................................................................................14

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ........................................................................................................16

*Carter v. Ball*,
  33 F.3d 450 (4th Cir. 1994) ..........................................................................................16

*Clark Cnty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)......................................................................................................17

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
  140 S. Ct. 1009 (2020)..................................................................................................11

*Crawford v. Newport News Indus. Corp.*,
  No. 4:14-CV-130, 2018 WL 4561671 (E.D. Va. Mar. 2, 2018)...............................16

*Cuffee v. Tidewater Cmty. Coll.*,
  409 F. Supp. 2d 709 (E.D. Va.), *aff'd*, 194 F. App'x 127 (4th Cir. 2006) ................17

*Denny v. Elizabeth Arden Salons, Inc.*,
  456 F.3d 427 (4th Cir. 2006) ........................................................................................11

ii

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ...................................................................5

*EEOC. v. Cent. Wholesalers, Inc.*,
  573 F.3d 167 (4th Cir. 2009) .................................................................14

*EEOC v. Fairbrook Med. Clinic, P.A.*,
  609 F.3d 320 (4th Cir. 2010) .................................................................15

*Goines v. Valley Cmnty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ...................................................................5

*Guessous v. Fairview Prop. Invs.*,
  LLC, 828 F.3d 208 (4th Cir. 2016)........................................................11

*Hampton v. J.W. Squire Co.*,
  No. 4:10-cv-00013, 2010 WL 3927740, (W.D. Va. Oct. 5, 2010) .........14

*Hice v. Mazzella Lifting Techs., Inc.*,
  589 F. Supp. 3d 539 (E.D. Va. 2022) ......................................................6

*Hinton v. Virginia Union Univ.*,
  185 F. Supp. 3d 807 (E.D. Va. 2016) ....................................................17

*Holland v. Washington Homes, Inc.*,
  487 F.3d 208 (4th Cir. 2007) .....................................................12, 15, 16

*Jennings v. Univ. of N. Carolina*,
  482 F.3d 686 (4th Cir. 2007) .................................................................14

*Jordan v. School Bd. of City of Norfolk*,
  Civ. No. 2:22cv167, 2022 WL 16835868 (E.D. Va. Nov. 9, 2022) ...........6, 7, 8

*Kloth v. Microsoft Corp.*,
  444 F.3d 312 (4th Cir. 2006) ...................................................................5

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)...............................................................................11

*Nadendla v. WakeMed*,
  24 F.4th 299 (4th Cir. 2022) .......................................................11, 12, 13

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002)...............................................................................14

*Ofoche v. Apogee Med. Grp., Virginia, P.C.*,
  815 F. App'x 690 (4th Cir. 2020) ..........................................................16

CORE/0833121.0015/181398141.4

*Parikh-Chopra v. Strategic Mgmt. Servs., LLC*,
   Case No. CL 2021-0003051, 109 Va. Cir. 155 (Fairfax Circuit Court Dec. 9,
   2021) (unpublished opinion) .................................................................................7

*Perry v. Kappos*,
   489 F. App'x 637 (4th Cir. 2012) .................................................................17, 18

*Ray v. Int'l Paper Co.*,
   909 F.3d 661 (4th Cir. 2018) .......................................................................16, 17

*Sorto v. AutoZone, Inc.*,
   821 F. App'x 188 (4th Cir. 2020) ................................................................13, 14

*Spriggs v. Diamond Auto Glass*,
   242 F.3d 179 (4th Cir. 2001) .......................................................................13, 15

*Wahi v. Charleston Area Med. Ctr., Inc.*,
   562 F.3d 599 (4th Cir. 2009) ...............................................................................5

**Statutes**

42 U.S.C. § 1981 .......................................................................................... *passim*

Va. Code Ann. § 2.2-3900 *et seq.* ...............................................................................1

Va. Code Ann. § 2.2-3907 .......................................................................................6, 7

Va. Code Ann. § 2.2-3908 ..........................................................................................6

**Regulations**

1 Va. Admin. Code §§ 45-20-30.C, 45-20-30.D ........................................................8

1 Va. Admin. Code § 45-20-98.C ..............................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................5

CORE/0833121.0015/181398141.4

Defendant Washington Gas Light Company ("Washington Gas" or "Company"), by and through undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to dismiss Plaintiff's First Amended Complaint.

## INTRODUCTION

Plaintiff Deirdre Young, a former employee of Defendant Temporary Solutions, Inc. ("Temporary Solutions") who was placed at Washington Gas pursuant to a contract for staff and services between Temporary Solutions and Washington Gas, filed an eight-count First Amended Complaint with the Circuit Court of Fairfax County, Virginia, which was timely removed by Defendants to this Court. The First Amended Complaint alleges that Washington Gas violated both 42 U.S.C. § 1981 and the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900 *et seq.*, by subjecting Plaintiff to age discrimination, age-based harassment, race discrimination, race-based harassment, and retaliation during her employment, which ended March 17, 2020.

As discussed in greater detail below, all of Plaintiff's claims should be dismissed with prejudice because she has failed to state a claim upon which relief can be granted.

## RELEVANT FACTUAL BACKGROUND FROM THE FIRST AMENDED COMPLAINT

Plaintiff, a 56-year-old Black woman, was employed by Temporary Solutions between February 5, 2018 and March 17, 2020 and placed at a Washington Gas facility in Northern Virginia pursuant to a contract for staff and services between Temporary Solutions and Washington Gas. Dkt. 1-7 ¶¶ 10–12. Plaintiff began working as a Proctoring Administrator and, *inter alia*, prepared the schedule for Washington Gas testing facilities and coordinated with the training team to update proctoring processes. *Id.* ¶ 14. In or around October 2018, Plaintiff was promoted to Proctoring Coordinator and became the point person for the Washington Gas Operator Qualifications Knowledge Testing Center, maintaining the day-to-day operations and providing assistance to

Washington Gas trainers and contract administrators. *Id.* ¶ 16. Plaintiff received positive performance reviews. *Id.* ¶ 17.

Beginning in approximately October 2019, Thomas Robb, a Caucasian male, began supervising Plaintiff. In approximately November or December 2019, Mr. Robb told Plaintiff and his predominantly Black staff that when his father married a Black woman, his family became homeless because the people in his neighborhood did not like Black people. *Id.* ¶¶ 18–19. Mr. Robb informed them that his family had to move to a trailer park and he was bullied and beaten up for being a "nigger lover." *Id.* ¶ 20.

At a staff meeting in November or December 2019, Mr. Robb also stated, "Deirdre is older than everyone in here and she has kids my age!" *Id.* ¶ 23. Plaintiff told Mr. Robb that "it was not funny," and her coworker Tyrita Thomas, also a Black woman, told Mr. Robb, "You know you cannot say that right?" Plaintiff left the meeting, and Mr. Robb approached her and stated, "Deirdre, I should not have said that! You can hit me, go ahead and hit me right here!" Plaintiff declined to hit Mr. Robb. *Id.* ¶¶ 24–30.

In January 2020, Plaintiff complained to Gwendolyn Drain, Temporary Solutions' Senior Staffing Specialist, about Mr. Robb's comments. Plaintiff also spoke with Mr. Robb directly, recounting to him comments he previously made to her: "Be more motherly to your team"; "You are older"; and "When did you start having children? At age 12?" Plaintiff also told Mr. Robb that he spoke to his predominantly Black staff in a belittling manner and may be engaged in race discrimination. *Id.* ¶¶ 31–36.

At another time in January 2020, Mr. Robb joined a conversation between Plaintiff, Ms. Thomas, and employee Contressa Keitt and talked about what Donald Trump was doing for the country. He stated that Barack Obama had the worst record ever and had done nothing for his own

CORE/0833121.0015/181398141.4

people. Mr. Robb stated, "You people kill each other every day!" Plaintiff responded, "Really, are you serious?" *Id.* ¶¶ 37–42. Thereafter, Mr. Robb allegedly set difficult deadlines for Plaintiff to meet, provided Plaintiff contradictory instructions, and denied her the opportunity to earn voluntary overtime. *Id.* ¶ 47–50. At a different time, Mr. Robb told Plaintiff, "You remind me of my stepmother!" *Id.* ¶ 57.

Plaintiff was furloughed from her position on March 17, 2020 due to COVID-19. *Id.* ¶ 60. On June 5, 2020, Plaintiff learned that the rest of her coworkers who had also been furloughed due to COVID-19, except Ms. Thomas, had been recalled by Washington Gas and Temporary Solutions. *Id.* ¶ 61. When Ms. Thomas asked Ms. Drain why she was not recalled, Ms. Drain replied, "I don't know. Who knows what Tom [Robb] is doing? He is in a world of his own." *Id.* ¶ 62.

## RELEVANT PROCEDURAL BACKGROUND WITH REGARD TO PLAINTIFF'S ADMINISTRATIVE CLAIMS BEFORE THE EEOC

On August 11, 2020, Plaintiff filed a charge of discrimination, Charge No. 570-2020-02393, with the Equal Employment Opportunity Commission ("EEOC") Washington Field Office against Washington Gas and Temporary Solutions alleging violations under Title VII of the Civil Rights Act of 1964. Ex. 1 to the Declaration of Grant E. Mulkey ("Mulkey Decl."). Plaintiff also filed a separate Title VII Charge of Discrimination against Temporary Solutions that was designated as EEOC Charge No. 570-2020-02394. Dkt. 1-7 ¶ 6; Dkt. 1-4 at 30–31. On October 30, 2020, the EEOC Washington Field Office issued Plaintiff a Dismissal and Notice of Rights, also known as a Right to Sue Letter ("10/30/2020 Right to Sue Letter") notifying Plaintiff of her right to file a lawsuit against Washington Gas "WITHIN 90 DAYS of your receipt of this notice." Mulkey Decl. Ex. 2. Plaintiff did not file suit against Washington Gas under Title VII.

CORE/0833121.0015/181398141.4

On February 11, 2021, the EEOC Washington Field Office issued a letter informing Plaintiff that the still-pending charge against Temporary Solutions, designated in the letter as EEOC Charge No. 570-2020-02394C, had been transferred to the Prince William County Human Rights Commission for processing as part of an EEOC workload distribution. Mulkey Decl. Ex. 3. Washington Gas was not named in EEOC Charge No. 570-2020-02394C. *Id.* On October 12, 2022, the EEOC Washington Field Office issued Plaintiff a Right to Sue Letter ("10/12/2022 Right to Sue Letter") regarding EEOC Charge No. 570-2020-02394 and notifying Plaintiff of her right to file a lawsuit against Temporary Solutions "WITHIN 90 DAYS of your receipt of this notice." Mulkey Decl. Ex. 4.

On or about May 4, 2021, Plaintiff allegedly filed a complaint alleging discrimination, harassment, and retaliation with the Virginia Office of Civil Rights of the Department of Law. Dkt. 1-7 ¶ 7; Dkt. 1-4 at 32–39.

Plaintiff originally commenced this action on December 22, 2022 by filing a Complaint against Defendants in the Circuit Court of Fairfax County, Virginia in Case No. CL-2022-0017236 alleging violations of the VHRA. Dkt. 1-1. On February 15, 2023, Plaintiff filed Plaintiff Deirdre Young's Motion for Leave to Amend & File Her First Amended Complaint, Dkt. 1-4, which was granted on March 14, 2023, Dkt. 1-6. On March 14, 2023, Plaintiff's First Amended Complaint was filed with the Circuit Court of Fairfax County. Dkt. 1-7. In addition to alleging violations of the VHRA, the First Amended Complaint added Counts VI, VII, and VIII, alleging that Defendants engaged in race discrimination, race-based harassment, and retaliation in violation of 42 U.S.C. § 1981. *Id.* ¶¶ 112–41. Defendants timely removed the matter to this Court on April 4, 2023. Dkt. 1.

## **LEGAL STANDARD**

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), the Court "accept[s] as true all of the factual allegations contained in the complaint" and draws "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). However, "the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

When considering a motion to dismiss, courts are "generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmnty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Courts may "consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." *Id.* at 166 (citation omitted). Further, courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.*

## ARGUMENT

I.     **Plaintiff Has Failed to State a Claim for Relief under the VHRA.**

The first six counts of the First Amended Complaint allege that Washington Gas violated the VHRA by subjecting Plaintiff to: (1) age discrimination (Count I); (2) age-based harassment (Count II); (3) race discrimination (Count III); (4) race-based harassment (Count IV); and (5) retaliation (Count V). Plaintiff fails to state a claim with regard to each of her claims under the VHRA.

> A.     **Counts I–V Fail to State a Claim Because Plaintiff Failed to Exhaust Administrative Remedies as to Washington Gas Before Filing Suit under the Virginia Human Rights Act.**

The VHRA utilizes an "extensive remedial scheme" that requires a plaintiff to exhaust administrative remedies by filing a complaint with, and receiving a Right to Sue Letter from, the Virginia Office of Civil Rights of the Department of Law ("OCR"), before bringing a claim for discrimination or retaliation. Va. Code Ann. §§ 2.2-3907, 2.2-3908; *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022). After receiving this complaint, the OCR "conduct[s] an investigation to determine whether there is reasonable cause to believe the alleged discrimination occurred" and issues a report detailing its findings. Va. Code Ann. § 2.2-3907(D); *Hice*, 589 F. Supp. 3d at 553. A claimant has a right to file a civil suit under the VHRA seeking damages "*[o]nly after* receiving the report," unless the OCR's investigation takes more than 180 days. *Hice*, 589 F. Supp. 3d at 553 (emphasis added); *Jordan v. School Bd. of City of Norfolk*, Civ. No. 2:22cv167, 2022 WL 16835868, at *10 (E.D. Va. Nov. 9, 2022) ("Private citizens may only sue under the VHRA once they have 'been provided a notice of [their] right to file a civil action pursuant to § 2.2-3907.'" (quoting Va. Code Ann. § 2.2-3908(A))).

Plaintiff failed to exhaust her administrative remedies with the OCR prior to filing her suit alleging violations of the VHRA. Instead, Plaintiff points to the receipt of a Right to Sue Letter

from the EEOC on or about October 30, 2022 in support of her claim that she exhausted her administrative remedies, as required by the VHRA, prior to filing her claim under the VHRA. Dkt. 1-7 ¶ 8. But the issuance of a Right to Sue Letter from the EEOC is irrelevant to the question of whether Plaintiff exhausted her administrative remedies prior to bringing her *state law* claims; the only relevant inquiry is whether Plaintiff received a Right to Sue Letter from the OCR. "The VHRA is not ambiguous on this matter. Section 2.2-3907 specifies that 'the *Office* shall promptly issue a notice of the right to file a civil action.'" *Jordan*, 2022 WL 16835868, at *12 (quoting Va. Code Ann. § 2.2-3907) (emphasis in original). Moreover, "the text of the EEOC right-to-sue notification makes no indication that the claimant has a right to sue under state law nor does it make any mention of the VHRA or any other state law." *Id.* at *13. This interpretation of the plain language of the VHRA is in accord with its interpretation by Virginia state courts: "Proceedings before the EEOC are irrelevant to this court. . . . Only the presentment of claims and the exhaustion of the administrative remedies before the Virginia Attorney General's Office of Civil Rights satisfy the prerequisite to filing a discrimination lawsuit in Virginia's state courts." *Parikh-Chopra v. Strategic Mgmt. Servs., LLC*, Case No. CL 2021-0003051, 109 Va. Cir. 155, at *2 (Fairfax Circuit Court Dec. 9, 2021) (unpublished opinion).

Plaintiff pursued administrative remedies in the EEOC Washington Field Office and received multiple Right to Sue Letters from that office, one against Washington Gas dated October 30, 2020, and one against Temporary Solutions dated October 12, 2022, regarding potential violations of Title VII of the Civil Rights Act. Exs. 2, 4. She apparently did not file a complaint with the OCR alleging discrimination, harassment, and retaliation under the VHRA until May 4,

2021. Dkt. 1-7 ¶ 7; Dkt. 1-4 at 32–39.[1] Further, Plaintiff has never received a Right to Sue Letter from the OCR, a necessary prerequisite under the VHRA whose omission is fatal to this suit. Therefore, to the extent Counts I–V of the First Amended Complaint allege that Washington Gas violated the VHRA, they fail to state a claim against Washington Gas because Plaintiff has failed to exhaust administrative remedies as to any such claims. *Jordan*, 2022 WL 16835868, at *13.

### B.    Counts I–V Fail to State a Claim as to Washington Gas Because They Are Time-Barred by the Applicable Statute of Limitations.

Plaintiff did not file a claim with the OCR alleging discrimination, harassment, and retaliation in violation of the VHRA until May 4, 2021. Dkt. 1-7 ¶ 7; Dkt. 1-4 at 32–39. Yet Plaintiff's employment with Temporary Solutions at Washington Gas ended March 17, 2020, and she alleges that she knew by June 5, 2020 that all employees who had been furloughed due to COVID-19 had been recalled except for her and Ms. Thomas. Dkt. 1-7 ¶¶ 12, 61. Complainants alleging a violation of the VHRA must file a complaint with the OCR "not later than 180 days from the day upon which the alleged discriminatory practice occurred," or "not later than 300 days from the day upon which the alleged discriminatory practice occurred" if the complaint alleges "a violation of federal statutes governing discrimination in employment" that also falls under the VHRA. 1 Va. Admin. Code §§ 45-20-30.C, 45-20-30.D. Even if Plaintiff's OCR claim was subject to the 300-day filing period and that period did not begin to run until June 5, 2020, Plaintiff had to file her complaint with the OCR no later than April 1, 2021. She failed to do so, instead waiting to file until May 4, 2021, 333 days after she allegedly knew that the other furloughees had been recalled. Plaintiff's OCR complaint was therefore untimely, and Counts I–V of the First Amended

---

[1] Although not material to the grounds for dismissal of the First Amended Complaint, Defendant Washington Gas notes that it has no record of being notified about or receiving any correspondence regarding Plaintiff's alleged complaint filed with the OCR.

CORE/0833121.0015/181398141.4

Complaint derived from that untimely complaint, filed despite Plaintiff's failure to secure a Right to Sue Letter from the OCR, consequently fail to state a claim upon which relief can be granted.

Washington Gas does not dispute that Plaintiff timely filed EEOC Charge No. 570-2020-02393 against Washington Gas or that she received a Right to Sue Letter from the EEOC vis-à-vis Washington Gas on October 30, 2020. For the reasons set forth above, however, exhausting her remedies with the EEOC for a hypothetical Title VII action that she did not bring is irrelevant to the question of whether she exhausted the required remedies before filing suit under the VHRA. Yet even if Plaintiff's exhaustion of administrative remedies with the EEOC satisfied her obligation to exhaust administrative remedies under the VHRA, Counts I–V nevertheless fail to state a claim upon which relief can be granted as to Washington Gas because they are time-barred by the applicable statute of limitations. The statute of limitations to commence an action alleging that an employer committed an unlawful discriminatory practice under the VHRA is ninety (90) days after a Right to Sue Letter is issued to the plaintiff. 1 Va. Admin. Code § 45-20-98.C ("The charging party will have 90 days from the date the division issues its notice of right to sue to file a civil action in the appropriate state court to enforce their rights under the Act."). The EEOC Washington Field Office issued the 10/30/2020 Right to Sue Letter to Plaintiff on or about October 30, 2020, notifying Plaintiff that she could file a lawsuit under Title VII within ninety (90) days of receipt of that notice. Plaintiff failed to commence any action alleging that Washington Gas violated the VHRA or Title VII within that 90-day time period.

The 10/12/2022 Right to Sue Letter issued by the EEOC Washington Field Office on or about October 12, 2022 does not transform this untimely action against Washington Gas into a timely one. The 10/12/2022 Right to Sue Letter dismissed EEOC Charge No. 570-2020-02394, the charge against Temporary Solutions, not against Washington Gas. The EEOC charge brought

CORE/0833121.0015/181398141.4

against Washington Gas ended 02393, not 02394. Moreover, copies of the 10/12/2022 Right to Sue Letter were issued only to representatives of Temporary Solutions. A Right to Sue Letter regarding a different charge filed against a different employer does not, and cannot, transform this untimely action into a lawsuit timely filed against Washington Gas. Therefore, to the extent Counts I–V of the First Amended Complaint allege that Washington Gas violated the VHRA, they are time-barred by the applicable statute of limitations and fail to state a claim upon which relief can be granted.

## II.   Plaintiff Has Failed to State a Claim for Relief under 42 U.S.C. § 1981 ("Section 1981").

Counts VI, VII, and VIII of the First Amended Complaint allege that Plaintiff was: (1) discriminated against in the workplace due to her race (Count VI); (2) subjected to a racially hostile work environment affecting the "conditions of her employment" (Count VII); and (3) retaliated against based on her protected activity. Plaintiff fails to state a claim with regard to each aspect of her claims under Section 1981.

### A.   Count VI Fails to State a Claim Because Based on the Facts as Alleged Plaintiff Cannot Prove the Elements of a Section 1981 Race Discrimination Claim.

For evidence of racial bias in support of her Section 1981 claim, Plaintiff relies exclusively on alleged comments by her supervisor at Washington Gas. For example, Plaintiff alleges that this supervisor said that after his father married a Black woman, he and his family faced discrimination. Dkt. 1-7 ¶¶ 19–20). It is alleged that the supervisor said his family lived in a racist neighborhood, lost their housing and ended up living in a "trailer park" after his father married his stepmother, and that he was "bullied and beaten up, for being a nigger lover" because his stepmother was Black. *Id.* ¶ 20. In addition to the supervisor's description of discrimination he and his family (including his Black stepmother) suffered, Plaintiff offers allegations that the supervisor supported

Donald Trump and was critical of Barack Obama as further evidence of allegedly racist comments. *Id.* ¶ 39.

In order to state a claim of racial discrimination under Section 1981, a complaint must present facts which if true would support an inference that (1) the "defendant intended to discriminate on the basis of race," (2) "the discrimination interfered with a contractual interest," and (3) "the interference with a contractual interest would not have happened *but for* [her] race." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (emphasis added) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020), and *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). Here, Plaintiff has failed to meet this standard and therefore fails to state a claim of race-based discrimination under Section 1981.

Plaintiff alleges that her supervisor's statements "show direct evidence of race discrimination." Dkt. 1-7 ¶ 116. However, this is far from what the allegations here support.[2] Plaintiff's supervisor demonstrated poor judgment and insensitivity in reusing a racial slur to describe what *he himself* had been called. However, a common sense reading of the supervisor's remarks as alleged in the First Amended Complaint indicates that they are a description of discrimination against his family based on his stepmother's race. The statements alleged to have been made do not support an inference of racial bias against Plaintiff.

---

[2] Plaintiff may prove the intent element of her Section 1981 claim of race discrimination either with direct evidence or via the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 216 (4th Cir. 2016). Although Plaintiff "need not plead facts demonstrating that she satisfies the *McDonnell Douglas* framework to survive a motion to dismiss," here, Plaintiff did not present any direct evidence of race discrimination, and she cannot establish race discrimination under the McDonnell Douglas test. *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020), *as amended* (Oct. 16, 2020). As discussed in detail below, Plaintiff identifies no adverse action apart from the allegedly retaliatory failure to rehire her after furlough. She also fails to identify any similarly situated employees who are not Black and were treated more favorably.

CORE/0833121.0015/181398141.4

Similarly, Plaintiff cannot rely on support for Donald Trump and criticism of Barack Obama as proof of racial bias. Other comments alleged to have been made by the supervisor during an ill-advised political discussion, such as "You people kill each other every day!"; or "Because he had a black grandmother, he understood," although obtuse and insensitive, do not provide direct evidence of race discrimination. *Cf. Benjamin v. Sparks,* 173 F. Supp. 3d 272, 286 (E.D.N.C. 2016), *aff'd*, 986 F.3d 332 (4th Cir. 2021) (in the context of considering a hostile work environment claim, the court notes that "[a]lthough insensitive," coworkers' actions did not "objectively . . . constitute a change in the conditions of [plaintiff's] employment").

Finally, with regard to the requirement that Plaintiff demonstrate that racial discrimination "interfered with a contractual interest," and that such interference "would not have happened but for [her] race," Plaintiff has not alleged any negative repercussions in her terms and conditions of employment arising from the supervisor's alleged comments that are independent of her claims of a racially hostile work environment and retaliation. *Nadendla*, 24 F.4th at 305. Plaintiff alleges in Count VII that she suffered a racially hostile work environment as a result of her supervisor's alleged comments and in Count VIII that she allegedly suffered retaliation after complaining about those alleged comments. The only adverse action that Plaintiff may have suffered was that she was not rehired from furlough, an action that she alleges was in retaliation for protected activity.[3] In addition to the failure of her allegations to provide direct evidence of racial bias, Count VI of the First Amended Complaint fails to state a claim for relief because Plaintiff has provided no basis to

---

[3] Section 1981's protection against contractual interference on the basis of race mirrors the adverse action requirement in Title VII. *Compare Nadendla,* 24 F.4th at 305 ("Section 1981 defines 'make and enforce contracts' as including the 'making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'"), *with Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (cleaned up) ("An adverse employment action [under Title VII] is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment.").

infer that her supervisor's alleged comments "interfered with a contractual interest," and that such interference "would not have happened but for [her] race." *Id*.

### B. Count VII Fails to State a Claim Because the Conduct Alleged Was Neither Racist Nor Sufficiently Severe and Pervasive to Constitute a Racially Hostile Work Environment.

With respect to Count VII of the First Amended Complaint, Plaintiff's factual allegations do not support a hostile work environment claim under 42 U.S.C. § 1981. To allege a Section 1981 hostile work environment claim, Plaintiff must plead facts that allow the Court to draw a reasonable inference that her supervisor's actions were "(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). Further, "[s]imple teasing, sporadic abusive language, offhand comments, jokes related to protected status, and isolated incidents (unless extremely serious)" will not alter the terms and conditions of employment. *Benjamin*, 173 F. Supp. 3d at 286 (listing cases).

Assuming (but not conceding), for purposes of this Motion that Plaintiff's supervisor's comments as alleged were unwelcome and based on race, although insensitive, obtuse, and unprofessional, they were not "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs*, 242 F.3d at 183. "[R]ude or insensitive treatment cannot sustain a hostile work environment claim." *Benjamin*, 173 F. Supp. 3d at 286; *see Barker v. Computer Science Corp.*, No. 1:13-CV-857, 2015 WL 1442864, at *5 (E.D. Va. Mar. 27, 2015) ("The other incidents, many of which are at best tenuously linked to race, were 'sporadic' and did not occur on an 'almost daily' basis."); *see also Sorto v. AutoZone, Inc*., 821 F. App'x 188, 191 (4th Cir. 2020) (dismissing plaintiff's complaint because most comments did not relate to race and the few that involved race were "isolated references").

13

In the Fourth Circuit, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009); *see also Barker*, 2015 WL 1442864, at *4 (listing cases). Courts have found that context matters especially with regard to the use of a racial epithet; notably, unlike frequent or "almost daily" uses of the "n-word," infrequent or sporadic uses of a racial epithet may not rise to the level of severe and pervasive. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) ("To be sure, viable hostile work environment claims often involve repeated conduct."); *compare Barker*, 2015 WL 1442864, at *5 (finding that a coworker's action of showing the plaintiff a picture with the n-word on it was not sufficiently pervasive or severe) *and Hampton v. J.W. Squire Co.*, No. 4:10-cv-00013, 2010 WL 3927740, at *4 (W.D. Va. Oct. 5, 2010) (finding that a supervisor's use of the n-word three times in one conversation was insufficient to constitute an abusive environment), *with Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir.1995)) (finding sufficient evidence of a hostile work environment where the plaintiff was called racial slurs on an "almost daily" basis for six months). In the instant case, the context in which the supervisor used the n-word, while entirely unprofessional, was a retelling of a slur that he was called, rather than an epithet directed at Plaintiff or another Black employee. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (cleaned up) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment.").

In addition, based on Plaintiff's allegations themselves it is not reasonable to infer that the supervisor's comments were intended "to humiliate, ridicule, or intimidate." *Cent. Wholesalers, Inc.*, 573 F.3d at 176 (quoting *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007)); *Sorto*, 821 F. App'x at 191 ("Harassment is considered sufficiently severe or pervasive so as to

alter the terms or conditions of employment if a workplace is 'permeated with discriminatory intimidation, ridicule, and insult.'"). Plaintiff's own allegations rather support the inference that the supervisor was making a misguided attempt to relate to or "bond" with his employees. *Cf. EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010) ("Activities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct.").

For these reasons, Count VII of the First Amended Complaint fails to state a claim of hostile work environment under Section 1981.

### C.   Plaintiff Fails to State a Claim of Retaliation in Count VIII Because She Cannot Establish That She Would Have Been Rehired *But For* Her Protected Activity.

With respect to Count VIII of the First Amended Complaint, Plaintiff's factual allegations do not support a claim of retaliation under Section 1981. To allege a Section 1981 retaliation claim, Plaintiff must plead facts that allow the Court to draw a reasonable inference that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) *but for* her protected activity, she would not have been subjected to the adverse action. *Spriggs*, 242 F.3d at 190; *Ali*, 832 F. App'x at 173. Although Plaintiff's allegations might support an inference that she engaged in protected activity, her allegations do not support a reasonable inference that but for her protected activity, she would not have been subjected to an adverse employment action.

As an initial matter, the only legally sufficient adverse action alleged in the First Amended Complaint is the alleged failure to rehire Plaintiff after she and others were furloughed. Other claims of alleged negative developments after Plaintiff engaged in protected activity did not "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment" and are therefore legally insufficient as claims of adverse action. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). Plaintiff alleges that she was given deadlines that she could not

15

meet, had an increased workload, received contradictory instructions, and may have been approved for less voluntary overtime after her alleged protected activity. Dkt. 1-7 ¶¶ 48–50. None of these actions resulted in a "significant detrimental effect," and none of them rise to the level of a "decrease in compensation, job title, level of responsibility, or opportunity for promotion, [or] reassignment to a new position." *Id.* (finding that plaintiff's "more difficult" assignment that would presumably decrease his compensation was not an adverse action); *see also Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign").

While some courts have found that denial of overtime may be an adverse action, Plaintiff's allegations as to potential loss of overtime are conclusory and speculative. Plaintiff can therefore allege no details regarding when she requested and was denied overtime opportunities, how much additional wages she may have lost as a result of any overtime denial, or whether other similarly situated employees had overtime opportunities. *See Crawford v. Newport News Indus. Corp.*, No. 4:14-CV-130, 2018 WL 4561671, at *4 (E.D. Va. Mar. 2, 2018) (stating the prima facie test for overtime under Section 1981); *cf. Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) (finding, in the retaliation context, that denial of overtime may be materially adverse when shown that it resulted in significant loss of earnings).

In addition, the actions alleged in the First Amended Complaint, other than the failure to be rehired after furlough, are not materially adverse, as required for a retaliation claim, because they would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 815 F. App'x 690, 693 (4th Cir. 2020) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (internal quotation

marks omitted)). Courts in the Fourth Circuit have consistently held, for example, that "without collateral consequences," neither reprimands nor poor performance reviews are materially adverse. *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 832 (E.D. Va. 2016). In the instant case, Plaintiff's allegations do not support an inference that her increased workload, difficult deadlines, or contradictory work instructions resulted in collateral consequences related to her employment. *See, e.g. Cuffee v. Tidewater Cmty. Coll.*, 409 F. Supp. 2d 709, 721 (E.D. Va.), *aff'd*, 194 F. App'x 127 (4th Cir. 2006) (finding that an "unbearable workload" is not an adverse action for the purpose of retaliation*); Ray*, 909 F.3d at 670 (finding that a denial of overtime may be adverse only if the plaintiff actually shows that they lost pay or benefits as a result).

The only adverse action Plaintiff may have suffered is that she was not rehired after furlough. Assuming that Washington Gas's decision to not rehire Plaintiff from furlough was a materially adverse action, the factual allegations in the First Amended Complaint do not support a reasonable inference that but for Plaintiff's activities, she would have been rehired.

This Court may "infer a causal link where there is a 'close temporal proximity' between the time the employer learned of the protected activity and the time of the alleged retaliatory act." *Barker*, 2015 WL 1442864, at *7; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (explaining that temporal proximity may suffice to establish causation when protected activity and adverse action are "very close"). However, the reverse is also true: Months in between the protected activity and the adverse action, as is alleged in the First Amended Complaint, is often insufficient to establish causation. *Ali*, 832 F. App'x at 173; *Breeden*, 532 U.S. at 273–74 (citing cases finding that three and four months in between reports and adverse actions is insufficient); *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) ("Even a mere ten-week separation between the protected activity and termination is sufficiently long so as to weaken significantly

the inference of causation between the two events." (citation and internal quotation marks omitted)). Here, Plaintiff made a variety of reports, the first of which was in early January 2020, Dkt. 1-7 ¶ 31, and the last of which was in early March 2020 when Plaintiff told her supervisor that he was "interfering with her work duties," *id.* ¶ 51. As stated in the First Amended Complaint, "[s]oon after, the staff were furloughed because of COVID-19." *Id.* ¶ 60. Three months later, in June 2020, Plaintiff found out that she was not rehired after furlough. *Id.* ¶ 61. Thus, the months-long period of time between Plaintiff's reports and when she learned that she had not been rehired does not suggest causation.

The First Amended Complaint does not provide any other basis to infer that Plaintiff would have been rehired but for her alleged protected activity. Plaintiff's references to another Black employee who was not rehired do not support an inference that this individual was not rehired because she had engaged in protected activity. Indeed, Plaintiff alleges that when Ms. Thomas, the other individual who was not rehired after furlough, asked Temporary Solutions' representative why she was not called back, the representative's response was that she did not know. *Id.* ¶ 62. Temporary Solutions' representative's statement that the Washington Gas supervisor "is in a world of his own" tends more to undermine an inference of but for retaliatory intent. *Id.* The statement has no connection to Plaintiff's alleged reports or other protected activity.

Plaintiff has therefore failed to state a claim for relief based on retaliation under Section 1981.

## CONCLUSION

For the foregoing reasons, Washington Gas respectfully requests that the Court grant its Motion and dismiss Plaintiff's First Amended Complaint with prejudice.

CORE/0833121.0015/181398141.4

DATED: April 11, 2023

Respectfully submitted,

**STINSON LLP**

By: _____

Grant E. Mulkey
Virginia State Bar No. 82452
1201 Walnut Street
Suite 2900
Kansas City, MO 64106
Telephone: 816.691.3203
Fax: 816.412.8124
grant.mulkey@stinson.com

Bernadette C. Sargeant
Admitted *Pro Hac Vice*
1775 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
Telephone: 202.728.3018
bernadette.sargeant@stinson.com

*Counsel for Defendant Washington Gas
Light Company*

19