IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DEIRDRE YOUNG,

    *Plaintiff*,

v.

WASHINGTON GAS LIGHT COMPANY,

  and

TEMPORARY SOLUTIONS, INC.

    *Defendants*.

Case No.: 1:23-cv-00445

## REPLY IN SUPPORT OF DEFENDANT TEMPORARY SOLUTIONS INC.'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

In attempt to save her woefully deficient claim for retaliation against Defendant Temporary Solutions, Inc. ("Temporary Solutions"), Plaintiff Deirdre Young ("Plaintiff") asks this Court to proceed to trial based on nothing more than her own speculation and conjecture about her removal from her placement with Temporary Solutions' client Defendant Washington Gas Light Company ("Washington Gas"). However, once Plaintiff's unsupported speculations are discounted, it is clear, based on the undisputed record evidence, that no reasonable jury could find that Temporary Solutions is liable for retaliation under these facts.

As a staffing agency, Temporary Solutions can only be liable for Washington Gas' retaliatory conduct if Temporary Solutions knew of and then failed take steps *within its control* to remedy that conduct. Here, Plaintiff cannot produce a shred of evidence to dispute that (i) Temporary Solutions had no involvement in the decision to conclude Plaintiff's placement at Washington Gas; (ii) the decisionmaker at Washington Gas had no knowledge of any race-based

1

complaints made by Plaintiff to anyone; (iii) Temporary Solutions had no reason to believe that Washington Gas' actions with respect to Plaintiff were retaliatory; (iv) Temporary Solutions never took any form of adverse action against Plaintiff; and/or (v) Plaintiff voluntarily refused to accept the substitute placement promptly offered to her by Temporary Solutions. Essentially, there is no evidence that Temporary Solutions took any unlawful action with respect to Plaintiff's placement with Washington Gas. Plaintiff's claim for retaliation against Temporary Solutions therefore should be dismissed as a matter of law, understanding that her claim for discrimination – which appears to be a primary focus of her response to Temporary Solutions' motion for summary judgment – has already been dismissed as a matter of law.

## ARGUMENT AND CITATION TO AUTHORITY

### I. Plaintiff Has Not Established Any Genuine Dispute of Material Fact.

In order to survive summary judgment, Plaintiff "must establish that there is a genuine issue of material fact" as to Temporary Solutions' alleged liability for retaliation. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment…[f]actual disputes that are irrelevant or unnecessary will not be counted." *Wai Man Tom v. Hospitality Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Further, the dispute must be genuine, which means that Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Although all inferences must be drawn "in the light most favorable to the non-moving party," that "party cannot solely rely on [the] 'mere allegations or denials of [her] pleadings,'" but "must set forth specific facts that go beyond the "mere existence of a scintilla of evidence." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). "[U]nsupported speculation is insufficient to defeat a motion for

4855-6087-8771.v3

summary judgment." *Dawson v. Kroger Limited Partnership I*, Case No. 7:19-cv-00388, 2021 WL 2589701, at *9 (W.D. Va. June 24, 2021); *see also Northcutt v. Cooper Power Sys., LLC*, No. 5:11-cv-726-BO, 2013 WL 5574473, at *1 (E.D.N.C. Oct. 9, 2013) ("Speculation and conjecture are insufficient to survive summary judgment.").

Despite these clear mandates, Plaintiff's statement of facts allegedly in dispute is based on nothing more than her conjecture that certain facts could exist, as opposed to actual evidence that those facts in fact exist. For example, Plaintiff contends that there is a dispute of fact as to whether either Kevin Dunn ("Mr. Dunn") of Washington Gas or Holly Anzano ("Ms. Anzano") of Temporary Solutions was aware that Plaintiff had made any complaints of discrimination at any time prior to June 2020. (*See* Plaintiff's Statement of Disputed Facts at ¶¶ 21, 26, 31[Dkt. 55-17].) Nevertheless, Plaintiff does not offer any actual evidence to refute Mr. Dunn and Ms. Anzano's actual testimony. (Deposition of Kevin Dunn ("Dunn Dep.") at 67:2-68:2 [Dkt. 53-4]; Declaration of Holly Anzano ("Anzano Decl.") at ¶¶ 8-11 [Dkt. 53-8].) As to Mr. Dunn, Plaintiff merely states that because Wilder Reed ("Mr. Reed"), a union president, reported Plaintiff's complaints to Washington Gas' Director of Labor Relations, it is "foreseeable" that someone subsequently informed Mr. Dunn. (*Id.*) However, Plaintiff puts forth no evidence showing that any such subsequent conversation actually took place.

Plaintiff's attempts to refute Ms. Anzano's sworn testimony regarding her lack of knowledge of any complaints by Plaintiff, are similarly unavailing. On this point, Plaintiff merely states that she lacks sufficient knowledge as to whether this fact is true or not, and because Gwendolyn Drain ("Ms. Drain") was aware of Plaintiff's complaints, then Ms. Anzano could have been as well. (*See id.* at ¶¶ 26, 29-31.) Plaintiff cannot rely on her mere speculation about what Ms. Anzano could have known or what Ms. Drain could have told her to create an issue of disputed

3

fact—Plaintiff must come forward with specific evidence that creates a dispute of fact to survive summary judgment. *See Glynn*, 710 F.3d at 213.

Plaintiff also wholly fails to dispute that Mr. Dunn was the only decisionmaker with respect to the decision not to bring her or Tyrita Thomas ("Ms. Thomas") back to the Washington Gas testing center following the COVID-19 furlough. Here, the sworn testimony of Mr. Dunn and Thomas Robb ("Mr. Robb") established that Mr. Dunn was the decisionmaker. (*See* Dunn Dep.at 33:1-35:17; 65:16-66:5; Deposition of Thomas Robb ("Robb Dep.") at 61:1-5 [Dkt. 53-5].) Yet, Plaintiff asserts, without any evidence, that the jury should be allowed to decide whether this undisputed fact is true because Mr. Robb may have had some input into the decision and may have harbored retaliatory animus toward Plaintiff. (Plaintiff's Statement of Disputed Facts at ¶ 24.) This kind of speculation is entirely insufficient to defeat summary judgment.

In sum, Temporary Solutions has put forth undisputed evidence that (a) Mr. Dunn was the ultimate decisionmaker as it related to Plaintiff's position with Washington Gas; (b) that neither Mr. Dunn nor Ms. Anzano were aware of any complaints made by Plaintiff at the time they communicated about Washington Gas' decision not to bring Plaintiff back; (c) that Temporary Solutions had no control over Mr. Robb or which individuals Washington Gas wanted to return to their testing center; and (d) that Temporary Solutions offered Plaintiff a substitute placement after Washington Gas informed her they did not want her to return. (*See generally* Temporary Solutions Brief in Support of Motion for Summary Judgment at 2-10 [Dkt. 53].) Plaintiff has not put forth any competent evidence to place any of these key facts in dispute.

Plaintiff's attempts to introduce additional facts fares no better because none of these facts are material to her claim against Temporary Solutions. In her Response Brief, Plaintiff puts forth

4855-6087-8771.v3

essentially two additional facts in support of her claim:[1] (1) that Mr. Robb allegedly told Plaintiff that he would like to make her position with Washington Gas permanent and would then discuss the matter with Mr. Dunn and (2) Mr. Reed brought concerns raised by Ms. Thomas about Mr. Robb to Bridnetta Edwards ("Ms. Edwards"), Washington Gas' then in-house counsel and Director of Labor Relations, sometime in February 2020. (Plaintiff's Response in Opposition to Temporary Solutions' Motion for Summary Judgment [hereinafter "Response Br."] at 3, 7 [Dkt. 55].) However, neither of these facts "affect the outcome of the suit under the governing law" and, therefore, are immaterial for purposes of Temporary Solutions' request for summary judgment. *Wai Man Tom,* 980 F.3d at 1037.

As an initial matter, Plaintiff's new testimony about her alleged conversation with Mr. Robb in which he indicated he would like to make her placement permanent does not change the fact that Temporary Solutions is not liable for Washington Gas' alleged retaliation. In fact, the only thing this testimony establishes, if true, is that while Mr. Robb may have once expressed a desire to make Plaintiff's position permanent, he did not have the power to do so without consulting Mr. Dunn—the individual at Washington Gas who actually had the authority to hire and fire temporary employees placed at the testing center. Further, Plaintiff does not put forth any evidence establishing that Mr. Robb ever then actually spoke to Mr. Dunn or that any other steps

---

[1] Plaintiff asserts that the "most important" disputed fact is whether Plaintiff engaged in protected activity as it relates to her alleged conversations with Ms. Drain from approximately November 2019 through March 2020. (*See* Response Br. at 11.) However, Temporary Solutions, as stated in its original briefing, does not dispute Plaintiff's version of the facts regarding what Plaintiff told Ms. Drain about Mr. Robb during these conversations for purposes of its Motion for Summary Judgment. (*See* Temporary Solutions Br. at 4-5.) Even if Plaintiff's testimony about her conversations with Ms. Drain is true, she still cannot state a claim for retaliation against Temporary Solutions for the reasons stated herein and in Temporary Solutions' opening briefing.

5

were taken to make her position with Washington Gas permanent. (*See generally* Response Br. at 3-9.)

Moreover, any testimony from Plaintiff that she somehow believed her position with Washington Gas was permanent is directly contradicted by her earlier deposition testimony and cannot create any fact dispute. *See Genesis Office Sys., Inc. v. PNC Bank, N.A.*, 693 Fed. Appx. 939, 940-41 (4th Cir. 2016) (holding statements in plaintiff's "self-serving, uncorroborated affidavit" that contradicted prior sworn testimony were "insufficient to create a material issue of fact"). Specifically, at her deposition, Plaintiff expressly testified that she was aware, when she began working for Temporary Solutions, that she may be placed in temporary positions, and that there was no guarantee as to the type, number, or frequency of the work assignments offered through Temporary Solutions. (Deposition of Deirdre Young ("Young Dep.") at 11:2-17; 13:22-14:12; 26:3-27:5 [Dkt. 53-1].) Therefore, she cannot now rely on her contradictory affidavit to create a fact dispute as to whether her placement with Washington Gas was converted to some kind of permanent placement.

As to Mr. Reed's alleged conversation with Ms. Edwards regarding Ms. Thomas' complaints about Mr. Robb, that is wholly irrelevant to Plaintiff's claim. However, to the extent that Mr. Reed's conversation also included complaints made by Plaintiff about Mr. Robb, it is still immaterial because there is no evidence that Mr. Reed or Ms. Edwards ever informed Mr. Dunn, the undisputed decisionmaker as it relates to Plaintiff's placement, about these complaints. In fact, there is no evidence that Ms. Edwards took any action with respect to Mr. Reed's report and certainly no evidence that she ever spoke to Mr. Dunn or anyone at Temporary Solutions (*e.g.*, Ms. Anzano or Ms. Drain) regarding Plaintiff's concerns. Without evidence of some connection

between Mr. Reed's conversation with Ms. Edwards and Mr. Dunn's decision to not bring Plaintiff back, Mr. Reed's testimony is entirely immaterial to this dispute.

## II. Plaintiff Cannot Show that Temporary Solutions Failed to Take Corrective Action Related to Any Alleged Retaliation.

As an initial matter, Plaintiff admits in her Response Brief that she is not seeking to hold Temporary Solutions liable for its own alleged retaliatory action against Plaintiff, but instead for failing to take corrective action to remedy Washington Gas' alleged retaliation. (*See* Response Br. at 12-13.) However, Plaintiff spends the vast majority of her Response Brief explaining how Temporary Solutions failed to take corrective action to remedy alleged *discrimination* by Mr. Robb, while making virtually no argument about the only act of *retaliation* at issue, the termination of her placement. (*See id.* at 13-16.) Plaintiff's claims for discrimination against both Temporary Solutions and Washington Gas were dismissed by this Court [Dkt. 39]. Therefore, the relevant inquiry is not whether Temporary Solutions failed to take corrective action to remedy alleged discrimination, but whether it took appropriate action, within its control, to remedy the alleged retaliation and the undisputed facts show that Temporary Solutions took the only corrective action within its control.

To establish that Temporary Solutions, as a staffing agency, is liable for Washington Gas' alleged retaliation, Plaintiff must show that Temporary Solutions (1) knew or should have known of the alleged retaliation and (2) failed to take corrective action within its control. *See Brief-McGurrin v. Cisco System, Inc.*, Case No. 1:18CV131, 2019 WL 1332357, at *2 (M.D.N.C. Mar. 25, 2019); *see also Barski v. Cyberdata Techs., Inc.*, 2020 WL 4471827, at *8 (D. Md. 2020) (applying this co-employer framework to a retaliation claim). Plaintiff cannot meet this burden. First, Plaintiff has wholly failed to establish that Temporary Solutions either knew or should have known that Washington Gas was retaliating against her when it informed Temporary Solutions

7

that it did not want Plaintiff to return to the testing center. (*See generally* Response Br.) To the contrary, it is undisputed that Mr. Dunn did not consult anyone associated with Temporary Solutions regarding his decision and was not aware of any complaints Plaintiff may have raised regarding Mr. Robb prior to making this decision. (Dunn Dep. at 69:20-72:11; 67:2-68:2.) Further, Ms. Anzano, the individual at Temporary Solutions who Mr. Dunn informed of his decision relative to Plaintiff, also did not have any knowledge of Plaintiff's prior complaints about Mr. Robb and was not given any explanation for why Washington Gas did not want Plaintiff to return. (Anzano Decl. at ¶¶ 6, 9-10 [Dkt. 53-8].) There is simply nothing about these interactions that could have put Temporary Solutions on notice that Washington Gas somehow was retaliating against Plaintiff. *See McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1276-78 (N.D. Ala. 2013) (holding that retaliation claim against staffing agency failed where staffing agency played no part in the decision to terminate plaintiff from assignment and plaintiff established no evidence that staffing agency's reason for terminating her—the client asked that she be removed—was pretextual.)

Even more, Temporary Solutions took the only action within its control to remedy Plaintiff's loss of this placement—it offered her a substitute placement at the exact same rate of pay (*see* June 2020 Emails Between G. Drain and D. Young ("Placement Emails") [Dkt. 53-11]; *see generally* Young Dep. at 134:13-144:21.) In fact, Temporary Solutions took the exact "corrective" action contemplated by applicable EEOC Guidance. *See Brief-McGurrin*, 2019 WL 1332357, at *3 (citing EEOC enforcement guidance). Temporary Solutions, however, could not, as Plaintiff seems to contend, force Washington Gas to terminate Mr. Robb or require Plaintiff to return to the testing center when Washington Gas decided not to continue her placement. *See Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1357-58 (M.D. Fla. 2003) (A

staffing agency cannot "force its client, another private company, not to discriminate or run its business in a certain manner").

Plaintiff points to *Coffey v. Tyler Staffing Servs., Inc.* in an attempt to show why Temporary Solutions' response to any alleged retaliation was deficient. (*See* Response Br. at 14.) However, *Coffey*, unlike Plaintiff's case here, involved allegations of both discrimination and retaliation. *See* No. 7:19-cv-00015, 2021 WL 1132599, at *9 (W.D. Va. Mar. 24, 2021). On the retaliation claim specifically, the court held that the staffing agency was not liable for retaliation (as opposed to discrimination) where it kept the plaintiff on its roster for additional placements and offered her a substitute placement which she declined to accept. *See id.* This is precisely the course of action Temporary Solutions took with respect to Plaintiff—it offered her a substitute placement at the exact same rate of pay and then, when she refused, it kept her on its inactive roster—meaning she could have requested another placement at any time. (*See* Placement Emails; Temporary Solutions' Responses to Washington Gas First Interrogatory at No. 1 [Dkt. 55-13].) Plaintiff, by her own deposition testimony, was well aware that her employment with Temporary Solutions was not actually terminated, and admitted that she *chose* not to seek any further placement with Temporary Solutions. (Young Dep. at 142:19-145:21.) Temporary Solutions, like the staffing agency in *Coffey* cannot be liable for any retaliation against Plaintiff.

Plaintiff's reliance upon *Burton v. Freescale Semiconductor, Inc.*, is also misplaced. (*See* Response Br. at 14 n. 23.) In *Burton*, the court held that it was undisputed that the staffing agency carried out the plaintiff's termination "after professing a belief that the termination was legally dubious." 798 F.3d 222, 229 (5th Cir. 2015). Additionally, there was evidence in the record that the staffing agency had participated in some scheme, along with its client, to create false reasons for terminating the plaintiff's employment. *Id.* Nothing of this sort exists in this case as there is (a)

9

no evidence that Temporary Solutions had any reason to believe there was anything "legally dubious" about Plaintiff's termination and (b) no evidence that Temporary Solutions was involved in, much less created a false pretense for, Plaintiff's removal from Washington Gas. In fact, the record evidence shows the opposite—that Mr. Dunn never even informed Ms. Anzano (or anyone else at Temporary Solutions) why he did not want Plaintiff to return to the testing center and he certainly did not discuss his decision with Temporary Solutions beforehand. (*See* Dunn Dep. at 69:20-72:11; Anzano Decl. at ¶¶ 8-10.)

Finally, Plaintiff's argument that Temporary Solutions' offer of a substitute placement was somehow inadequate because it was a temporary placement, as opposed to a permanent placement, is completely disingenuous. (*See* Response Br. at 18-19.) As an initial matter, Plaintiff's own testimony shows that she clearly was aware that any position placed through Temporary Solutions was temporary and that there were no guarantees as to the duration of any particular placement, including her placement with Washington Gas. (*See* Young Dep. at 11:2-17; 13:22-14:12; 16:9-17:3.) Second, Plaintiff does not have a shred of evidence that her position with Washington Gas was actually intended to be made permanent by Washington Gas at any point in time. While Plaintiff alleges a conversation with Mr. Robb in November 2019 in which he indicated that he would like to make her position permanent, she admits that he said he would have to speak to Mr. Dunn about doing so. (Response Br. at 18-19.) All this potentially establishes is that Mr. Robb may have, at some unknown point, subjectively wanted to convert Plaintiff into a permanent Washington Gas employee, but did not have the power to do so. Moreover, there is no evidence he ever had the subsequent conversation with Mr. Dunn, much less than Mr. Dunn ever took any steps with Temporary Solutions to convert Plaintiff into a permanent Washington Gas employee. Far from a "horrible trade," Temporary Solutions offered Plaintiff a substitute placement that was,

4855-6087-8771.v3

essentially, the exact equivalent of the placement she had with Washington Gas at the exact same rate of pay. (*See* Placement Emails.) Because Temporary Solutions took the only action within its control to remedy Plaintiff's loss of her placement with Washington Gas, it cannot be liable for any claim of retaliation. Under these circumstances, "[i]t would be grossly inequitable to hold such an agency liable for [retaliation] that it was not aware of, had no reason to know was taking place, and of which it had no control." *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 938 (D.S.C. 1997).

**III.   There is No Evidence of Any Causal Connection Between Plaintiff's Removal from Washington Gas and Her Alleged Complaints to Ms. Drain**

In response to Temporary Solutions' argument that Plaintiff cannot establish any causal connection between her alleged protected activity and removal from her placement at Washington Gas, Plaintiff diverts attention to Temporary Solutions' alleged failure to take action to remedy her discrimination complaints. Here, she asserts that Temporary Solutions should be liable for Washington Gas' decisions because Ms. Drain should have made Ms. Anzano aware of Plaintiff's complaints about Mr. Robb. (*See* Response Br. at 17-18.) Plaintiff also appears to argue that Ms. Drain failed to inform Ms. Anzano as some form of intentional violation of Temporary Solutions' own policies to avoid liability for retaliation (that had not yet allegedly occurred). This argument is nonsensical and is not supported by any competent evidence of the motivations of Ms. Drain, Ms. Anzano, and Mr. Dunn. What the record evidence in this case does show, even if viewed in the light most favorable to Plaintiff, is that (a) Plaintiff complained to Ms. Drain about Mr. Robb during November 2019 through March 2020; (b) in May 2020, Mr. Dunn, without any input from Temporary Solutions or knowledge of any complaints made by Plaintiff, decided not to bring Plaintiff back from furlough; and (c) Mr. Dunn communicated this decision to Ms. Anzano who also had absolutely no knowledge of Plaintiff's alleged complaints regarding Mr. Robb. (*See*

11

*generally* Temporary Solutions Brief in Support of Motion for Summary Judgment at 2-10.) These facts are entirely insufficient to create any causal connection between any alleged protected activity and the adverse action (removal from her placement). *Murry v. Jacobs Tech., Inc.*, No. 1:10-cv-771, 2012 WL1145938, at *17 (M.D.N.C. Apr. 5, 2012); *see also McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1276-78 (N.D. Ala. 2013) (holding no causation where it was undisputed decisionmaker had no knowledge of plaintiff's complaints). Because Mr. Dunn, the decisionmaker, had no knowledge of Plaintiff's alleged complaints, there is no causal connection between any protected activity and any possible adverse action. Thus, Plaintiff's claim for retaliation under Section 1981 fails as a matter of law and should be dismissed.

## CONCLUSION

Based on the facts and arguments outlined above and in Temporary Solutions' opening brief, Temporary Solutions respectfully requests that this Court grant summary judgment in favor of Temporary Solutions and against Plaintiff and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted this 1st day of April, 2024.

[*Signatures of Counsel on following page*]

**ARNALL GOLDEN GREGORY LLP**

By: */s/ Justin F. Ferraro*

Justin F. Ferraro
Virginia State Bar No. 92226
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, DC 20037
Telephone: 202.677.4967
Fax: 202.677.4031
justin.ferraro@agg.com

Henry Perlowski
*Admitted Pro Hac Vice*
171 17th Street NW, Suite 2100
Atlanta, GA 30363
Telephone: 404.873.8684
henry.perlowski@agg.com

Lindsey Locke
*Admitted Pro Hac Vice*
171 17th Street NW, Suite 2100
Atlanta, GA 30363
Telephone: 404.873.8712
lindsey.locke@agg.com

*Attorneys for Defendant Temporary Solutions, Inc*.

4855-6087-8771.v3

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, I filed the foregoing Temporary Solutions, Inc.'s Reply in Support of its Motion for Summary Judgment using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

Dated: April 1, 2024.    By:   /s/ *Justin F. Ferraro*

  Justin F. Ferraro
  Virginia State Bar No. 92226
  ARNALL GOLDEN GREGORY LLP
  2100 Pennsylvania Avenue, NW
  Suite 350S
  Washington, DC 20037
  Telephone: 202.677.4967
  Fax: 202.677.4031
  justin.ferraro@agg.com